630 F.2d 149
 Gaynell REYNO, as Personal Representative of the Estate of
William Fehilly, Liam Stewart Fehilly, William
James McDougall Storm, David Vincent
Moran, and Peter Cunningham
Scott, Appellant,
v.
PIPER AIRCRAFT COMPANY, a corporation; Avco Lycoming Engine
Group, a Division of Avco Corporation; Hartzell
Propeller, Inc., a corporation.
 No. 79-2747.
 United States Court of Appeals,
Third Circuit.
 Argued May 22, 1980.
Decided July 24, 1980.
 
 Daniel C. Cathcart, Michael D. Moorhead (argued), Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., for appellant.
 Charles J. McKelvey, Ann Pepperman (argued), McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for appellee, Piper Aircraft Corp.
 Ronald C. Scott (argued), Krusen, Evans & Bryne, Philadelphia, Pa., for appellee Hartzell Propeller, Inc.
 Before ADAMS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This is an appeal from a dismissal of a wrongful death action on grounds of forum non conveniens. The issues include the factors to be considered in such a dismissal, the burden of persuasion on such motion, the scope of the trial judge's discretion, and the application of choice of law rules of California and Pennsylvania.
 
 
 2
 The event giving rise to this dispute was the crash of a Piper aircraft in Scotland in July 1976. The plane was owned by a Scottish air taxi service, the passengers and crew of which were Scottish. All persons aboard were killed and no witnesses survived the crash. There are indications, however, that something went wrong with the left engine for which compensatory action by the pilot was impossible, was unnecessarily difficult, or was ineptly handled by the pilot.[1]
 
 
 3
 Gaynell Reyno, a California resident and personal representative of the estates of various Scottish decedents, sued on their behalf in a California state court. Named as defendants were Piper Aircraft Corp., a Pennsylvania corporation that manufactured the aircraft; Avco Lycoming Engine Group, which produced the engine; and Hartzell Propeller, Inc., an Ohio corporation that built the propeller. The wrongful death action is based on theories of strict liability and negligence.[2]
 
 
 4
 On motions by Piper and Avco based on diversity of citizenship, the case was removed from the California state court to the federal district court in California. After the removal, Hartzell moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to the Middle District of Pennsylvania under 28 U.S.C. § 1404(a).[3] Piper moved to dismiss for failure to state a cause of action or, alternatively, to transfer the case to the Middle District of Pennsylvania and to strike the claim for punitive damages. The action was dismissed as to Avco with the agreement of plaintiff.
 
 
 5
 The district court in California entered an order (1) granting the motion to quash service of process as to Hartzell on the ground that personal jurisdiction over Hartzell was neither authorized by California law nor in accord with due process; and (2) transferring the case to the Middle District of Pennsylvania pursuant to § 1404(a).
 
 
 6
 Subsequent to the transfer, Hartzell was validly served with process in Pennsylvania and then moved to dismiss the case on the common law ground of forum non conveniens. Piper filed a similar motion captioned as a request for judgment on the pleadings or summary judgment. Both motions were accompanied by affidavits. On the basis of the affidavits, the trial judge granted the motions to dismiss because of forum non conveniens on condition that defendants submit to personal jurisdiction in Scotland and waive any statute of limitations there. Reyno filed a timely appeal.
 
 
 7
 In this Court, Reyno raises two major contentions: (1) The judge erred in not holding defendants equitably estopped to assert that Scotland was a more appropriate forum, inasmuch as Piper had maintained in California that Pennsylvania was the most appropriate forum. (2) The trial judge abused his discretion in dismissing the action. Subsidiary, but arguably crucial, to this second point is the claim that the district judge's order was based on a legal error as to whether Scottish or Pennsylvania law applied to most or all of the case.
 
 
 8
 I. THE INTERACTION OF A TRANSFER UNDER § 1404(a), A SUBSEQUENT FORUM NON CONVENIENS MOTION, AND THE CONCEPT OF PRECLUSION
 
 
 9
 Reyno argues that the district court erred in not considering whether the defendants were equitably estopped from moving to dismiss. Essentially, she contends that, by following a successful motion to transfer the case from California to Pennsylvania with a motion to dismiss so that the case would have to be filed in Scotland, the defendants are trifling with the court and wasting judicial and litigant time and resources.
 
 
 10
 The district court's opinion did, however, consider plaintiff's argument and rejected it, albeit in a somewhat summary fashion:
 
 
 11
 No cases are cited in support of that proposition and we believe that is a sufficient indicator of the merit of that argument. . . . The papers filed concerning the motion to transfer are, of course, irrelevant to the question we have decided. They were filed early on in this proceeding before many of the important facts of this case were uncovered. Also, Defendants should not be punished for their failure to file a motion to dismiss for forum non conveniens first, instead of the motion to transfer. If they would have filed such a motion we feel sure that the California district court would have likewise dismissed this action.[4]
 
 
 12
 The Court of Appeals for the Fifth Circuit has reversed the dismissal of an admiralty claim on forum non conveniens grounds for the reasons now pressed by Reyno. It declared that the defendant should not be permitted, after securing a statutory transfer from Louisiana to Georgia, to contend that Georgia was not really an appropriate forum; the defendant "may not 'so trifle with the judicial process.' "[5]
 
 
 13
 Defendants here urge, and the district court seemed to accept, that they did not take inconsistent positions before the district court in California and that in Pennsylvania. The motion in California, defendants claim, simply represented that Pennsylvania was a better forum than California, whereas the present motion contends that Scotland is better yet. Furthermore, they aver, any inconsistencies are a result of fuller knowledge of the relevant facts.
 
 
 14
 Examination of the motions made by defendants in California reveals that their prior allegations are indeed at variance with their present contentions. A statutory transfer, as well as a common law dismissal, must be shown to be not only more convenient, but also in the interest of justice. In meeting that burden, Hartzell asserted in California that "the plaintiffs would easily have their interests herein protected and adjudicated by application to the courts located in the State of Pennsylvania, and in fact such would be overwhelmingly fair to all the parties herein."[6] Similarly, Piper argued that "(t)he propriety of transferring the within action to Pennsylvania for the convenience of the witnesses appears to overwhelm other factors, in view of the apparent theories of liability as against the defendants."[7]
 
 
 15
 Both defendants asserted that, because the claim was based on strict liability, virtually all the evidence and material witnesses as to production and design would be in Pennsylvania or Ohio.[8] Furthermore, they argue that new facts bearing on forum non conveniens were discovered after motions were filed in California.
 
 
 16
 At the time of the transfer motion critical facts such as where various witnesses are, where the crash occurred, where the wreckage was located, and who owned the plane, were known. All that seems new was that a British administrative agency would investigate and report on the accident and that the decedents' estates would institute a separate action against the air taxi service in Scotland. Although these last facts are indeed relevant to a forum non conveniens motion, they are hardly surprising or significant.
 
 
 17
 Nevertheless, two factors weigh against an absolute preclusion to raise a forum non conveniens motion in this case: (1) The thrust of Hartzell's motion in the California court, and the contention accepted by that tribunal, was lack of personal jurisdiction. Arguably, then, it is not fair to make Hartzell responsible for proceedings there, even if it would be fair and proper as against Piper. (2) Forum non conveniens entails important considerations of public interest, in addition to those of the private litigants themselves. If defendants are correct in their proposition that trial in Pennsylvania would be unduly burdensome to the court and the juror community, it might be self-defeating to raise an absolute barrier to pleading forum non conveniens. Hence, although a party who moves for transfer under § 1404(a) will not be automatically estopped to assert forum non conveniens after a transfer is accomplished, the fact that a party previously succeeded in a statutory transfer ought to be weighed against dismissing for forum non conveniens and as adding to a defendant's already substantial burden on the later motion.
 
 II. FORUM NON CONVENIENS DISMISSAL
 
 18
 The doctrine that an otherwise validly brought claim may be dismissed because the forum chosen was inconvenient for trial originated in the common law of Scotland,[9] became part of the common law of many states,[10] and has a long history of use in federal admiralty actions.[11] It was introduced into federal diversity jurisdiction by Gulf Oil Corp. v. Gilbert[12] and Koster v. (American) Lumbermens Mutual Casualty Co.,[13] decided in 1947.
 
 
 19
 Simple in enunciation but complex in application, the principle of the doctrine is that a court may resist imposition upon its jurisdiction even when neither jurisdiction nor venue is defective.[14] As a result of the passage of 28 U.S.C. § 1404(a), soon after the two seminal Supreme Court cases,[15] forum non conveniens as a common law doctrine has been dormant for purposes of interstate dismissals within the federal system. That statute is similar to the common law doctrine, but authorizes transfers within the federal court system with a lesser burden both substantively and procedurally than a motion to dismiss.[16]
 
 
 20
 The question whether federal or state law of forum non conveniens applies in a diversity case was left open by the Supreme Court and has not definitively been decided by any court of appeals.[17] In this case, as in many brought before the federal courts, federal law has been argued at all stages in the litigation.[18] Upon specific request for supplementary briefing in this Court, all three parties agree that if a choice is necessary, federal law should be followed, and cite numerous district court opinions and commentaries in support of that position.[19] They assert, nevertheless, that it is probably not necessary to decide between federal and state law because the cases dealing with forum non conveniens in both California and Pennsylvania have mirrored federal law in all essential respects. We agree.[20]A. Comparative Burdens, Trial Court Discretion, and Standard of Review
 
 
 21
 A plaintiff is generally conceded the choice of forum so long as the requirements of personal and subject matter jurisdiction, as well as venue, are satisfied. He should not be deprived of the advantages presumed to come from that choice unless the defendant clearly adduces facts that "either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience . . . or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems."[21] A court must balance these private and public interest factors, "(b)ut unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[22]
 
 
 22
 The district judge believed that the plaintiff's choice of forum is of diminished significance, and the defendants' burden of showing inconvenience correspondingly less, when the plaintiff more precisely, the real party in interest is foreign or when the forum chosen is not the plaintiff's home ground.[23] But neither of these burden-shifting principles may be found in opinions of the Supreme Court or this Court.
 
 
 23
 In support of the proposition that less solicitude is due a foreign plaintiff's choice of forum, the district court relied on a decision of the District Court for the Southern District of New York which stated that a foreign plaintiff's "choice of forum should be given less weight than the choice of an American plaintiff."[24] The court of appeals affirmed the judgment in that case, but disapproved of the district court's characterization of the forum non conveniens doctrine applicable to noncitizens.[25] Indeed, as the Court of Appeals for the Second Circuit has recently held, the citizenship of the plaintiff does not affect the defendant's burden under Gilbert and Koster. American citizenship of the plaintiff does not increase the defendant's burden, just as foreign citizenship may not lessen it.[26]
 
 
 24
 The holding by the trial judge that a plaintiff's choice is entitled to less weight when it is not the plaintiff's state of residency is somewhat difficult to follow when, as here, that party had already been forced to cede the "home court advantage" as a result of the defendants' previous motion to transfer the case from California to Pennsylvania.[27] It would be the rare situation in which a defendant could complain of being vexed or harassed by defending a lawsuit on its home ground.
 
 
 25
 Of course, the Supreme Court has stated that "(t)he doctrine (of forum non conveniens) leaves much to the discretion of the court to which plaintiff resorts," but this broad proposition was followed by the explanatory observation that "experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses."[28] The standard of review is one of abuse of discretion,[29] but if the trial court has not held the defendants to their proper burden or has clearly erred in weighing the factors to be considered, the equivalent of an abuse of discretion has been demonstrated. Discretion must be exercised within the applicable standards.[30] The district court's wide discretion may not serve the defendants as a burden-shifting device on appeal from an order in their favor.
 
 B. The Applicable Factors
 
 26
 The Gilbert Court divided the elements to be considered into those affecting the private interests of the litigants and those in which the public has an interest. The former include
 
 
 27
 the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.[31]
 
 
 28
 Also relevant is the inability to implead other parties directly involved in the controversy.[32] These various ingredients are weighed to determine the "relative advantages and obstacles to fair trial."[33]
 
 
 29
 Among the public interest factors are a) problems of creating court congestion and imposing jury duty in litigation centers that are removed from the origin of the controversy, and b) benefits of holding the trial in a place accessible to the witnesses to the accident and of having the trial in a forum where the court is familiar with the law governing the case rather than having a court elsewhere untangle foreign law.[34]
 
 
 30
 We shall examine each of these elements to determine whether the defendants met their burden.
 
 C. Private Interests
 1. Convenience of Witnesses
 
 31
 If a dismissal is to be premised on the convenience of witnesses, more than a mere allegation to that effect is required. The rule for a statutory transfer, which is to be more readily granted, is no less applicable to a dismissal for forum non conveniens:
 
 
 32
 The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than on numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.[35]
 
 
 33
 The district court opinion does not discuss the need for such a showing, but rather merely refers generally to witnesses on the damages issue and witnesses on the potential supervening negligence of the Scottish air taxi service, all of whom are in Scotland.[36] Nor do the defendants direct us to any affidavits setting forth the requisite specific information, and our search of the record detects none. The requirement of specificity would seem more acute in this case given that in motions before the district court in California the defendants claimed somewhat inconsistently with the position now taken though perhaps more accurately, that all witnesses relevant to strict liability or negligence in manufacturing are in Pennsylvania or Ohio.[37]
 
 
 34
 At the least, then, the district court did not have sufficient information to weigh the convenience of witnesses, and its conclusion that this factor favored defendants appears to be without the requisite foundation.
 
 
 35
 One further error in discerning the balance of inconvenience to witnesses deserves mention. The trial judge stated that the convenience of expert witnesses, like that of counsel, "is of small importance."[38] No explanation was given for this assertion,[39] but the theory seems to be either that expert witnesses are fungible or that their testimony can be introduced effectively by deposition. We agree with authors of a noted treatise that this view is unsound.[40] In this case, as in many others, the testimony of expert witnesses will be crucial. Finding the most trustworthy and credible experts is not often easy, and the advantages of live testimony are not to be discounted.[41]
 
 
 36
 2. Availability of Compulsory Process and Impleader
 
 
 37
 The defendants' major factual contention when the case comes to trial will be that the fatal crash at issue was caused not by any manufacturing or design defects, but by pilot error or by the negligence of the foreign air taxi service. Inability to implead foreign third-party defendants was argued vigorously here as a problem with a trial in this country, and it has, of course, generally been considered an important consideration favoring a forum non conveniens dismissal.[42] Because there is an action pending in Scotland by the decedents' estates against the appropriate Scottish defendants, which lawsuit Piper and Hartzell have consented to join as codefendants, the district court concluded, that it would be unfair and unduly burdensome for defendants to be subjected to both trials. Although the extra burden is readily apparent, the unfairness is not. The defendants state their point as follows:
 
 
 38
 Defendants' inability to join (the Scottish) parties as defendants in this case would seriously prejudice Defendants, through exposure to unnecessary, duplicitous litigation, and inconsistent verdicts. If Defendants are found liable here, they will be forced to file an indemnity or contribution action in Scotland against these parties. In light of the fact that Pennsylvania and Scottish law differ greatly with respect to products liability, Piper faces the substantial possibility, and great prejudice, of being held liable on a products liability theory in this case but being forced to prove negligence in an indemnity or contribution action in Scotland. Even if the same standard of liability is applied in this action and in an indemnity or contribution action in Scotland, Defendants run the substantial risk that different juries will find different facts and, hence, produce inconsistent results.[43]
 
 
 39
 If the defendants are found liable on strict liability here but must prove negligence against the air carrier to obtain indemnity, that is not unfair, but simply the result reached under the laws of the jurisdictions in which the two companies reside. The air taxi operates exclusively in Scotland and plans its operations and expenses according to Scottish law. Piper and Hartzell reside in strict liability jurisdictions, conduct most of their business in strict liability states, and plan accordingly.
 
 
 40
 The defendants' risk of inconsistent verdicts would only exist if neither Pennsylvania nor Scotland followed principles of res judicata. Under those principles, any subsequent verdict for plaintiffs would merge with a previous favorable judgment or be barred by a prior judgment against the plaintiffs.[44] Res judicata is clearly applicable in American jurisdictions and we may assume, in the absence of any affidavits or citations of Scottish law to the contrary, that it is followed in Scotland as well.[45]
 
 
 41
 We therefore conclude that defendants' inability to implead other potentially liable parties would indeed make litigation here more burdensome, but defendants have not shown that it would also be unfair. It is properly an element in their favor on the motion to dismiss, but it is not as weighty as they contend.
 
 3. Desirability of Viewing the Premises
 
 42
 The district court concluded that, to the extent weight was to be assigned this factor, it favored defendants: "Familiarity with the topography around Tulla, Scotland and inspection of the wreckage of the plane would be aided by a trial in the British Isles."[46]
 
 
 43
 It is unclear whether the trial judge in fact ascribed any significant weight to this consideration, and still more uncertain is what benefit a lay jury would obtain from observing the wreckage in deciding whether the plane crashed because the engine or propeller were incorrectly manufactured or the pilot was negligent. Furthermore, the topography of Scotland may, to the extent relevant, be readily proved by testimony.
 
 D. The Public Interest
 
 44
 The parties in arguing this case, and the trial judge in deciding it, have placed the greatest importance on whether, under the applicable choice of law rules, American or Scottish law would apply to major aspects of the claims. The district court concluded that, for the most part, Pennsylvania law should apply to Piper and Scottish law to Harzell.[47] Because application of different laws to the different defendants might confuse the jury, and because ascertainment of Scottish law would make the trial more difficult, the necessity of applying foreign law to a portion of the case was considered the "uppermost" factor favoring dismissal.[48]
 
 
 45
 As will be discussed below, we conclude that the district court erred in its choice of law determinations. But even if the district court were correct in its conclusion that a mixture of Scottish and American law would be required, dismissal would not have been justified under this Court's settled principles of forum non conveniens.
 
 1. The Necessity of Applying Foreign Law
 
 46
 First, we held in Hoffman v. Goberman that "(i)t is settled that the mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before the court. The district court was therefore, in error in basing its action, in part at least, on this ground."[49] Although there may be circumstances in which the application of foreign law would present difficulties sufficient to favor dismissal because of difficulties of translation or because the foreign law itself has principles unknown to our jurisprudence we are not faced with such a case here.[50] Negligence principles are well-known on this side of the Atlantic and of course there will be no translation problems in dealing with Scottish law.
 
 
 47
 Second, if trial here would confuse the jury because a different country's law would apply to each defendant, that confusion would either not be eliminated by a trial in Scotland or would be eliminated only by unacceptable unfairness to the plaintiff. If, as is unlikely, a Scottish court as a "transferee" court would apply the same choice of law rulings as would the court here, it would have an equally difficult problem in applying the laws of different countries to different defendants. Dismissal here would not eliminate the difficulty, but only shift it to a foreign forum.
 
 
 48
 The district court, though, had the affidavit of Scottish counsel that Scotland's choice of law rule for torts was to apply the law of the place of injury to all facets of the case, and therefore Scotland probably would apply its own law to all claims. Even under the district court's choice of law analysis, requiring a mixture of American and Scottish law, it is apparent that the dismissal would work a change in the applicable law so that the plaintiff's strict liability claim would be eliminated from the case. But this Court has held that a dismissal for forum non conveniens, like a statutory transfer, "should not, despite its convenience, result in a change in the applicable law."[51] Only when American law is not applicable, or when the foreign jurisdiction would, as a matter of its own choice of law, give the plaintiff the benefit of the claim to which she is entitled here, would dismissal be justified.
 
 
 49
 2. Choice of Law Rules Under Klaxon and Barrack
 
 
 50
 As a federal court deciding a case premised on diversity jurisdiction, we are required by Klaxon[52] to apply the conflicts of law rules of the state in which we sit. We are not permitted to fashion our own rules, however clearer or salutory they might seem.[53] Complicating matters here is that, for purposes of this litigation and its choice of law problems, we are in effect "sitting" in two different states. Moreover, though not entirely disinterested, each state is in the position of choosing between the laws of two other states.
 
 
 51
 The action against Piper was transferred under § 1404(a) from California to Pennsylvania. The law of the transferor forum i. e., California's choice of law rules should therefore, under Van Dusen v. Barrack,[54] be applied as to Piper.
 
 
 52
 Hartzell's situation is more complex. The California district court ruled that personal jurisdiction over Hartzell was lacking, both under California law and the Due Process Clause. The court did not dismiss the case against Hartzell, but rather quashed service of process and ordered transfer to Pennsylvania along with codefendant Piper. Although this Court has held that transfer under § 1404(a) is proper even though the transferor state lacked personal jurisdiction,[55] that does not resolve the problem whether the Klaxon and Barrack rules would still require us to apply the choice of laws rule of the transferor state.
 
 
 53
 To state the problem is, we believe, to explain why California's law may not apply to Hartzell: if California's exercise of jurisdiction over Hartzell would violate due process, so would application of that state's choice of law rules.[56] Furthermore, Barrack is not so rigid. The Court there stated as a general rule of statutory construction of § 1404(a) that, to be "in the interest of justice," a transfer should not work a change in the applicable law.[57] We conclude that this case comes within an exception, the possibility of which was noted in Barrack,[58] to the application of the transferor state's law. As with any other statute, we must construe § 1404(a) to avoid any constitutional problem,[59] and so hold that when there has been an interstate transfer without personal jurisdiction, the transferor state's choice of law does not apply to that defendant. Because Pennsylvania does have personal jurisdiction, the federal court must look to that state's choice of law rules under Klaxon to determine which law applies to Hartzell.
 
 
 54
 Our analysis so far does not differ from that of the district court, which held that California's choice of law rules applied to Piper and Pennsylvania's rules applied to Hartzell.[60] The court went on to hold that under California's governmental interest approach the Scottish law of wrongful death would apply to make Reyno an improper litigant, but Pennsylvania's law of strict liability rather than Scotland's negligence law would govern the theory of the tort.[61] Pennsylvania's significant contacts approach was thought to require that Scottish law apply to all facets of the claim against Hartzell.[62] We must examine these rulings to determine whether they are erroneous as a matter of law.
 
 
 55
 a. California Conflicts Law Applied to Piper
 
 
 56
 California was a pioneering state in the governmental interest analysis approach to choice of law that was developed by Professor Currie.[63] In Reich v. Purcell,[64] the California Supreme Court abandoned the traditional view that the law of the place of wrong (injury) must be applied in tort actions regardless of the issues, and established in its stead the principle that "(t)he forum must search to find the proper law to apply based upon the interests of the litigants and the involved states."[65]
 
 
 57
 Also integral to the holding in Reich v. Purcell was the introduction into California law of the concept of "false conflicts."[66] In Reich, the wrongful death action arose from an automobile accident that occurred in Missouri between an Ohio plaintiff and a California defendant. Missouri, the state of injury, limited compensation for wrongful death, but neither California nor Ohio had any limitation. The California Supreme Court held that as to the issue of the extent of damages, as opposed to the standard of conduct on which liability was based, there was no true conflict in governmental interests. Since California had no limitation on damages, it had no interest in protecting its resident defendant from a higher recovery. Moreover, the defendant's California insurance policy would be calibrated to the potential burdens of larger claims. Missouri had an interest in the standard of conduct for behavior within its borders, but its interest in limiting damages was solely to protect in-state defendants. It had no substantial interest in extending that protection to defendants from states with no such limitations, and Ohio, as the state where the decedents' estates were probated, did have a substantial interest in unlimited recovery. Therefore, Ohio's law as to the damages issue was applied.[67]
 
 
 58
 Subsequent cases indicate a further refinement of the governmental interest and false conflict methodology termed a "comparative impairment" approach.[68] This approach comes into practice only after a " 'preliminary analysis has identified a true conflict of the governmental interests involved.' " Once this preliminary step is satisfied, the court resolves a true conflict by " 'determin(ing) which state's interest would be more impaired if its policy were subordinated to the policy of the other state. . . . (T)rue conflicts should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied.' "[69]
 
 
 59
 Among the relevant factors to be considered in determining choice of law under California's comparative impairment approach are the following:
 
 
 60
 (1) The status of the law whether it is to be considered anachronistic or ascendant in the common law jurisdictions. " 'If one of the competing laws is archaic and isolated . . . , it may not unreasonably have to yield to the more prevalent and progressive law, other factors of choice being roughly equal.' "[70]
 
 
 61
 (2) Insurance and other planning for risks. Parties may be expected to plan their activities with insurance in mind, and that planning may affect the comparative fairness of two competing rules of liability.[71]
 
 
 62
 As we have mentioned, the district court divided the case against Piper into distinct issues, and ruled that a California court would apply its law as to one and Scottish law as to others. He then employed what conflicts scholars refer to as depecage, defined as "the process of applying the rules of different states to determine different issues in the same case."[72] Although the California Supreme Court has not explicitly adopted this method, it is implicit in that court's analysis of cases and it is consistent with modern governmental interest analysis to examine comparative governmental interests as to each issue, to the extent the issues are separable and the balance of comparative interests may vary.[73] We shall therefore examine separately the issues identified by the parties and the district court: the standard of liability, damages for wrongful death, and the capacity of the plaintiff to bring a wrongful death suit as a representative.
 
 
 63
 Any asserted conflict between American strict liability and Scottish negligence law is, we believe, a false one. Two basic policies underlie theories of tort liability: deterrence of harm-causing conduct and compensation of persons injured by that conduct. In private tort law, in which civil rather than criminal liability is imposed, the deterrence function is accomplished by compensation of the plaintiff. The choice between holding a manufacturer liable only for negligence and holding it strictly liable for any dangerous products or design is, practically speaking, a matter both of searching for optimal deterrence of harmful conduct and of allocating the costs of injuries either to producers or consumers. A negligence standard is, broadly speaking, more protective of producers, while strict liability is more solicitous of consumers.
 
 
 64
 The perceived conflict in this case is between Scotland's interest in encouraging industry by protecting manufacturers and making it relatively more difficult for consumers to recover. Pennsylvania, by contrast, in adopting strict liability, has shifted some of the burdens of injuries from consumers to producers. By adopting this policy of increased deterrence, it seeks to make manufacturers more careful in production and design than they would be if held to a negligence standard.[74]
 
 
 65
 Applying Pennsylvania's strict liability standard to its resident manufacturer would serve that state's interest in the regulation of manufacturing. Scotland's interest in encouraging industry within its borders would not be impaired, however, by applying a stricter standard of care on a foreign corporation which has no industrial operations in Scotland. Furthermore, Scotland would have no interest in denying compensation to its residents for the purpose of benefiting a foreign corporation. Finally, imposition of strict liability on Piper cannot be said to be unfair to it. Inasmuch as Pennsylvania, the state in which Piper makes its product, and the vast majority of American jurisdictions in which most of Piper's aircraft are sold and fly, have strict liability,[75] that is the legal standard under which it plans its operations.
 
 
 66
 Pennsylvania's interest in deterring defects in products can be served without impairing any significant interest of Scotland. Application of Scotland's negligence law would only harm resident beneficiaries without any countervailing benefit to its industrial economy. We therefore conclude that, as between Pennsylvania and Scottish law on this issue, a California court would apply Pennsylvania's strict liability analysis. Similar considerations would govern any greater restrictions on recovery for wrongful death that Scotland may have.[76]
 
 
 67
 The district court declined to make any definitive ruling on the issue of plaintiff's capacity to sue because of the paucity of available information for balancing comparative governmental interests. 479 F.Supp. at 735. There was thought to be no need to decide this question, because the court concluded for other reasons that the action should be dismissed and brought anew in Scotland.[77]
 
 
 68
 Because we reverse the dismissal, it will be necessary for the trial judge to decide that issue based upon additional information. If it is held that Reyno does not have representative capacity, it will be necessary to allow a substitution of parties so that the decedents' estates can bring the action directly. Such a substitution would not destroy diversity and should be granted in the interests of justice.[78]
 
 
 69
 Guiding the trial judge's decision should be the requirement of Fed.R.Civ.P. 17(b) that the capacity of an individual to sue in a representative capacity "shall be determined by the law of the state in which the district court is held."[79] In addition to examining the laws of California and Pennsylvania to determine whether Reyno has representative capacity,[80] the trial court should consider whether the defendants' challenge to the plaintiff's capacity to sue has come too late in the litigation.[81]
 
 
 70
 b. Pennslyvania Conflicts Law Applied to Hartzell
 
 
 71
 Citing Griffith v. United Airlines,[82] the district court applied the "significant contacts" approach to determine that Scotland's standard of liability, rather than that of Ohio or Pennsylvania, applied to Hartzell.[83] But a close examination of Griffith and, more importantly, subsequent elaborations by the Pennsylvania Supreme Court reveals that Pennsylvania's approach to choice of law is quite similar, at least for purposes of this litigation, to that of California. Pennsylvania first looks to identify and thus avoid false conflicts, and then, when a true conflict is present, examines and compares the competing governmental interests.
 
 
 72
 In Griffith, the Pennsylvania Supreme Court overturned the old rule that the law of the state of wrong governs all issues in tort actions,[84] but it did not specifically set forth the contours of that rule's replacement. In fact, as the court later indicated, once governmental interests were examined Griffith involved a false conflict situation.[85] The state in which an airplane crashed was held to have no interest in enforcing its limitation of damages for wrongful death when neither party was a resident.[86]
 
 
 73
 The Pennsylvania Supreme Court noted three general approaches competing to replace the old rule: (1) Professor Currie's early emphasis on applying the forum's law when the forum has a legitimate interest in the issue presented;[87] (2) Professor Ehrenzweig's stress on the interests of the parties, specifically looking to whether the defendant would have planned by insurance for the risks to which he would be exposed by the applicable law;[88] and (3) the "significant contacts" approach of the Restatement (Second) of Conflicts, under which a court applies the law of the state with the most significant relationship with the occurrence and the parties.[89] Rather than choose among these alternative approaches, the Pennsylvania Supreme Court adopted what it believed was the essence of all three: "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."[90]
 
 
 74
 Subsequent cases confirm that Pennsylvania courts follow a governmental interest analysis approach, with a state's contacts being considered significant only when the behavior giving rise to the contact furthers or abrogates a state policy. Where the place of accident is fortuitous and the state where the accident occurred has no interest in the regulatory standard at issue, any conflict between that state and a state truly interested because, for example, the parties resided there, Pennsylvania appears to suggest, a false one.[91]
 
 
 75
 In McSwain v. McSwain, the court stated its approach as follows:
 
 
 76
 Whether the policies of one state rather than another should be furthered in the event of conflict can only be determined within the matrix of specific litigation. What should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.[92]
 
 
 77
 The latest discussion in Cipolla v. Shaposka[93] summarized the approach of the cases discussed above as calling upon the court to determine which state "has the greater interest in the application of its law to the question now before us." Moreover,
 
 
 78
 In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the "policies and interests underlying the particular issue before the court." When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.[94]
 
 
 79
 Griffith, McSwain and Cipolla indicate to us that the primary approach of the Pennsylvania Supreme Court in choice of law is governmental interest analysis. Our determination as to whether the Pennsylvania court would apply American strict liability and unlimited recovery for wrongful death, rather than the negligence and damage limitations law of Scotland, therefore follows our prediction of California law. Indeed, the district court ruled that American standards of liability would control under governmental interest analysis applied as to California.[95] It is apparent, then, that the district court erred in concluding that foreign law would govern a substantial part of the case, and it is likewise apparent that the choice of law factor weighed heavily in favor of dismissal for forum non conveniens.
 
 E. Other Elements of Public Interest
 
 80
 We have held that under the applicable choice of law rules Pennsylvania and Ohio are the jurisdictions with the greatest policy interest in this dispute. It follows that the other public interest factors that should be considered under the Supreme Court cases of Gilbert and Koster favor trial in this country rather than Scotland.
 
 III. CONCLUSION
 
 81
 Because the defendants did not meet the burden required of them for a forum non conveniens dismissal, the judgment of the district court will be reversed and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Determination of these issues by the ultimate factfinder, of course, will be dealt with when the merits of the case are reached
 
 
 [2]
 Plaintiff contends that the engine malfunction itself was the result of a design or manufacturing defect for which Piper is liable. In addition, the following dangerous and defective conditions in the aircraft are alleged: (1) inadequacies associated with the left propeller mechanism that prevented institution of emergency procedures in the event of engine loss; (2) design and manufacture of an aircraft incapable of single engine flight with a "windmilling" propeller; (3) manufacture of an aircraft with improper instruments for maintaining single engine operation; and (4) inaccuracies and omissions in the Aircraft Owners Handbook and flight manuals pertaining to emergency procedures and single engine operating speeds
 
 
 [3]
 That section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought
 
 
 [4]
 479 F.Supp. 727 at 738
 
 
 [5]
 Insurance Co. of North America v. Ozean/Stinnes-Linien, 367 F.2d 224, 227 (5th Cir. 1966) quoting Livesay Ind. v. Livesay Window Co., 202 F.2d 378, 382 (5th Cir.), cert. denied, 346 U.S. 855, 74 S.Ct. 70, 98 L.Ed. 369 (1953))
 
 
 [6]
 Hartzell's Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Jurisdiction over the Person or for Transfer under 28 U.S.C. § 1404(a) at 8. No. CV-77-3181-IH (C.D.Cal., filed Oct. 11, 1977)
 
 
 [7]
 Piper's Memorandum of Points and Authorities in Support of Motion to Transfer under 28 U.S.C. § 1404(a) at 6. No. CV-77-3181-IH (C.D.Cal., filed Nov. 23, 1977)
 
 
 [8]
 Hartzell stated in its memorandum that "the records and employees of the . . . defendants herein are prospective evidence and witnesses, respectively." Piper asserted, "Necessarily, it would seem that all material witnesses on the liability issues reside in either Pennsylvania or Ohio." In reply to plaintiff's opposition to the transfer, Piper argued that the respective employees of Piper and Hartzell Propeller, who were involved in the design, manufacture, testing, and assembly of the component parts in question, will be material witnesses, but they are located in Pennsylvania and Ohio. It is clear that the convenience of these witnesses is better served if the within action is pending in the State of Pennsylvania than if it is pending in the Central District of California
 
 
 [9]
 Braucher, The Inconvenient Federal Forum, 60 Harv.L.Rev. 908, 909-11 (1947). The issue of inconvenient forum as a question on the merits rather than of jurisdiction may be traced at least to 1845. See id. at 909 (citing M'Morine v. Cowie, 7 Dunl. 270 (1845))
 
 
 [10]
 See Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1 (1929); Braucher, supra note 9, at 911-12
 
 
 [11]
 The doctrine in admiralty is thought to derive from dictum in Mason v. The Ship Blaireau, 6 U.S. 143, 157, 2 Cranch 240, 264, 2 L.Ed. 266 (1804). See Bickel, The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Rev. 12, 12 & n.10 (1949); Braucher, supra note 9, at 920 & n.79. But cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 505 n.4, 67 S.Ct. 839, 841 n.4, 91 L.Ed. 1055. ("The doctrine did not originate in federal but in state courts.")
 
 
 [12]
 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)
 
 
 [13]
 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)
 
 
 [14]
 Gulf Oil Corp. v. Gilbert, 330 U.S. at 507, 67 S.Ct. at 842
 
 
 [15]
 62 Stat. 937 (1948) (codified at 28 U.S.C. § 1404)
 
 
 [16]
 The statute is a revision rather than just a codification of forum non conveniens. It permits federal courts to grant transfers on a lesser showing of inconvenience than is required under the common law doctrine and there is no need for pleadings or documents to be refiled in the transferee court. The relevant factors to be considered, however, are the same. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955)
 
 
 [17]
 The Erie question was a matter in controversy in both Gilbert and Koster until the cases reached the Supreme Court. In Gilbert the district court, relying on Weiss v. Routh, 149 F.2d 193 (2d Cir. 1945), held New York law to apply and dismissed the action. 62 F.Supp. 291, 294 (S.D.N.Y.1945). The Court of Appeals distinguished Weiss, held that federal law controlled, and reversed the trial judge for abuse of discretion. 153 F.2d 883, 886 (2d Cir. 1946). A separate panel deciding Koster also applied federal law, but cautiously noted that the result would have been the same under state law. 153 F.2d 888, 890 n.2 (2d Cir. 1946). In considering the merits of the dismissal, the Supreme Court relied exclusively on Supreme Court cases, but then avoided discussion of the Erie problem with the following:
 The law of New York as to the discretion of a court to apply the doctrine of forum non conveniens, and as to the standards that guide discretion is, so far as here involved, the same as the federal rule. . . . It would not be profitable, therefore, to pursue inquiry as to the source from which our rule must flow.
 330 U.S. at 509, 67 S.Ct. at 843 (citations to New York cases omitted). In Koster the Court was equally inscrutable. See 330 U.S. at 529, 67 S.Ct. at 834 ("Since this case is pending in New York and is a diversity case, it is appropriate to observe that the law of New York, if applicable, is to the same effect as to the considerations to govern forum non conveniens questions in this class of cases.").
 The Court's decision not to decide was sharply criticized by Professor Braucher who observed that it
 seems to have been arrived at by something like main force: in the Koster case it was contrary to the unanimous view of the circuit judges (that federal law applied), and in the Gilbert case it was reached only by ignoring the state court decision most nearly in point, which had been cited with approval by the New York Court of Appeals. Since the circuit court of appeals had not regarded the New York law as controlling, previous decisions suggest that if New York law were held to govern, the normal practice of the Supreme Court would be to remit the case to the lower court to determine that law. 123
 
 
 [123]
 Wertheim v. Clergue, 53 App.Div. 122, 65 N.Y.Supp. 750 (1st Dep't 1900); see Gregonis v. Philadelphia & R. C. & I. Co., 235 N.Y. 152, 139 N.E. 223, 225 (1923). The Wertheim case reversed dismissal of an action based upon false representations in the inducement and performance of a contract on the ground there was no discretion in "cases arising out of commercial transactions and affecting property." 53 App.Div. at 126, 65 N.Y.Supp. at 753. The Supreme Court relied on New York cases containing general statements that there is discretion to dismiss tort actions
 Braucher, supra note 9, at 928 (footnotes 122 and 124 omitted). Since the Gilbert and Koster cases, the Second Circuit has altered its position to indicate that the Erie question is an open one. See Thomson v. Palmieri, 355 F.2d 64, 66-67 (2d Cir. 1966).
 
 
 [18]
 See Founding Church of Scientology v. Verlag, 536 F.2d 429, 434 n.13 (D.C.Cir.1976) ("Although the issue has never been squarely addressed by this Court, federal courts in the District (of Columbia) have in practice used the federal law of forum non conveniens.")
 
 
 [19]
 A footnote in Koster addressing the question whether federal courts have discretion to decline granted jurisdiction strongly points, along with the structure of the Court's reasoning in both Gilbert and Koster, toward use of federal rather than state law:
 Some of our cases appear to hold broadly that the federal courts must exercise their jurisdiction, when they have it. (citing cases). But this is not a case in which it is urged that a state statute restricting remedy to state proceedings defeats federal diversity jurisdiction, as (those cases) were . . . . In those cases, the Court held that when a state recognizes a cause of action, suit may be brought on it in federal court if diversity jurisdiction is established. That holding has nothing to do with this case. We are concerned here with the autonomous administration of the federal courts in the discharge of their own judicial duties, subject of course to the control of Congress.
 330 U.S. at 520 n.1, 67 S.Ct. at 830 n.1 (emphasis added). Moreover, in Parsons v. Chesapeake & O. R. Co., 375 U.S. 71, 73, 84 S.Ct. 185, 186, 11 L.Ed.2d 137 (1963), which was not a diversity case, the Court held that "a prior state court dismissal on the ground of forum non conveniens can never serve to divest a federal district judge of the discretionary power (to transfer a case under § 1404(a))." Virtually all the district courts and commentators that have squarely faced the issue have decided to apply federal law. See, e. g., Poe v. Marquett Cement Manuf. Co., 376 F.Supp. 1054, 1057-59 (D.Md.1974); Lapides v. Doner, 248 F.Supp. 883, 885-94 (E.D.Mich.1965); Shulman v. Compagnie Generale Transatlantique, 152 F.Supp. 833, 834-36 (S.D.N.Y.1957); 1A (pt. 2) Moore's Federal Practice P 0.317(2), at 3232-33 (2d ed. 1978); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3828, at 181 & n.19 (1976).
 
 
 [20]
 Opinions of the Pennsylvania Supreme Court have adopted almost verbatim the factors to be considered that are set out in Gilbert and Koster : scope of trial court discretion, and standard of appellate review. See Rini v. N. Y. Central R. Co., 429 Pa. 235, 240 A.2d 372 (1968); Plum v. Tampax, Inc., 399 Pa. 553, 160 A.2d 549 (1960). The section of the Restatement regarding forum non conveniens, on which the Pennsylvania courts also rely, in turn relies on their major federal cases. See Restatement (2d) Conflict of Laws § 84 note (1971). California's forum non conveniens doctrine, formerly of common law origin, is now statutorily codified at Cal.Civ.Proc.Code § 410.30. Archibald v. Cinerama Hotels, 15 Cal.3d 853, 858, 544 P.2d 947, 950, 126 Cal.Rptr. 811, 814 (1976). California law precludes except in extraordinary cases, a trial court from dismissing on forum non conveniens grounds an action brought, as in this case, by a California resident. Id. at 859, 544 P.2d at 950, 126 Cal.Rptr. at 814. An exception to this limitation is made where, also as here, a California resident sues in a representative capacity for foreign beneficiaries. See id. at 860 & n.6, 544 P.2d at 951 & n.6, 126 Cal.Rptr. at 815 & n.6. In all respects relevant to this case, then, we find no dissimilarities in the factors considered under federal and California law. Cf. Jagger v. Superior Court, 96 Cal.App.3d 579, 585-87, 158 Cal.Rptr. 163, 166 (1979) (outlining California law in manner essentially following Gilbert and Koster ; concluding that satisfaction in divorce action between foreign celebrities should be deferred to English courts)
 
 
 [21]
 Koster, 330 U.S. at 524, 67 S.Ct. at 832
 
 
 [22]
 Gilbert, 330 U.S. at 508, 67 S.Ct. at 843; see Schertenleib v. Traum, 589 F.2d 1156, 1164 (2d Cir. 1978) ("We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal."); Hoffman v. Goberman, 420 F.2d 423, 426-27 (3d Cir. 1970)
 
 
 [23]
 479 F.Supp. at 731
 
 
 [24]
 Farmanfarmaian v. Gulf Oil Corp., 437 F.Supp. 910, 927 (S.D.N.Y.1977), aff'd on other grounds, 588 F.2d 880 (2d Cir. 1978)
 
 
 [25]
 See Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2d Cir. 1978)
 
 
 [26]
 Alcoa Steamship Co., Inc. v. M/V Nordic Regent, F.2d No. 78-7054, slip op. 2d 5960-68, 5973 (2d Cir. Feb. 25, 1980) (en banc). The court of appeals en banc thus seems to have overturned without specific mention the panel holding in Olympic Corp. v. Societe Generale, 462 F.2d 376, 378 (2d Cir. 1972), that the defendant's burden is greater if an American plaintiff is to be relegated to a foreign forum. The Olympic Corp. opinion was also relied on by the district court here
 
 
 [27]
 Phoenix Canada Oil Co., Ltd. v. Texaco, Inc., 78 F.R.D. 445, 453 (D.Del.1978). The district court relied on Fitzgerald v. Texaco, Inc., 521 F.2d 448, 451 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976), which may have relied too literally on Koster's mention of deference to a plaintiff's choice of his home forum in setting forth the defendant's burden of establishing inconvenience. See 330 U.S. at 524, 67 S.Ct. at 831. It is apparent that the Koster court was simply setting forth the proposition that, as between diverse citizens, convenience of a particular forum to one party will almost inevitably mean inconvenience to the other. Given this trade-off, the plaintiff's choice will generally be respected
 
 
 [28]
 Gilbert, 330 U.S. at 508, 67 S.Ct. at 843
 
 
 [29]
 DeMateos v. Texaco, Inc., 562 F.2d 895, 897 (3d Cir. 1977), cert. denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978)
 
 
 [30]
 Cf. Founding Church of Scientology v. Verlag, 536 F.2d 429, 436 (D.C.Cir.1976) ("Where, as here, there has been no weighing of the relative advantages of each forum but only a consideration of the drawbacks of one, that discretion has been abused."). By way of analogy, it appears appropriate to note that on appeal from the grant of a preliminary injunction, "the standard of appellate review is simply whether the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion." Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) (emphasis added). Thus an order for a preliminary injunction may be reversed if the trial court "commits an obvious error in applying the law, or makes a serious mistake in considering the proof." A. O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir. 1976); see Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 357 (3d Cir. 1980)
 
 
 [31]
 330 U.S. at 508, 67 S.Ct. at 843
 
 
 [32]
 Id. at 511, 67 S.Ct. at 844; Fitzgerald v. Texaco, Inc., 521 F.2d 448, 453 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976)
 
 
 [33]
 Id. at 508, 67 S.Ct. at 843
 
 
 [34]
 Gilbert, 330 U.S. at 508-09, 67 S.Ct. at 843
 
 
 [35]
 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3851 at 270-71 (1976); see Marbury-Pattillo Construction Co., Inc. v. Bayside Warehouse Co., 490 F.2d 155, 158 (5th Cir. 1974); Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 148 (10th Cir. 1967). This rule has wide authority in the district courts as well. See, e. g., Follansbee Metals Co., Inc. v. John T. Clark & Son of N. H., Inc., 387 F.Supp. 574, 581 (W.D.Pa.1974); Clay v. Overseas Carrier Corp., 61 F.R.D. 325, 331 (E.D.Pa.1973); Shulof v. Westinghouse Elec. Corp., 402 F.Supp. 1262, 1264 (S.D.N.Y.1975)
 
 
 [36]
 479 F.Supp. 727 at 732
 
 
 [37]
 See pp. 5-6 & note 8 supra
 
 
 [38]
 479 F.Supp. 727 at 732
 
 
 [39]
 The district court referred to Car-Freshner Corp. v. Auto Aid Mfg. Corp., 438 F.Supp. 82, 85 (N.D.N.Y.1977), which simply cites other cases without explaining. The proposition seems to be traceable to Nocona Leather Goods Co. v. A. G. Spaulding & Bros., Inc., 159 F.Supp. 269, 270-71 (D.Del.1958). The judge in that case simply concluded that the inconvenience to plaintiff's expert in one forum was counter-balanced by the inconvenience to defendant's expert in the other forum. It was not that the two were insignificant, but that they cancelled each other out
 
 
 [40]
 See 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3852, at 275 (1976)
 
 
 [41]
 Id.; see Lykes Bros. S. S. Co. v. Sugarman, 272 F.2d 679, 681 (2d Cir. 1959); Berkshire Int'l Corp. v. Alba-Waldensian, Inc., 352 F.Supp. 831, 834-35 (S.D.N.Y.1972) (Weinfeld, J.); Medich v. American Oil Co., 177 F.Supp. 682 (E.D.Pa.1959) (Biggs, J., sitting by designation)
 
 
 [42]
 See Gilbert, 330 U.S. at 511, 67 S.Ct. at 844, Fitzgerald v. Texaco, Inc., 521 F.2d 448, 453 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976)
 
 
 [43]
 Brief of Appellee Piper at 22. Hartzell's argument on this point is simply conclusory:
 As is reinforced by the plaintiffs' survivors action against the air carrier employing the pilot, the agency owning and maintaining the airplane and the estate of the pilot in Scotland, those parties should be joined as defendants and cannot be joined in the United States but could be joined in the proper Forum.
 Brief of Appellee Hartzell at 13.
 
 
 [44]
 See generally Reinstatement (2d) Judgments §§ 47, 48, 68.1 (Tent. Draft No. 1, March 28, 1973)
 
 
 [45]
 Defendants submitted affidavits from Scottish counsel only on the following points of Scottish law: (1) choice of law, (2) damages that may be awarded, (3) statutes of limitations, and (4) capacity to sue
 
 
 [46]
 479 F.Supp. at 734
 
 
 [47]
 The trial court opinion stated:
 Uppermost in our weighing of these public interest factors is that a trial in this forum would be hopelessly complex and confusing for a jury as different laws will apply to different parties. From our review of the applicable choice of law rules, it appears that Pennsylvania law would apply to Defendant Piper and that Scottish law would apply to Defendant Hartzell.
 
 
 [479]
 F.Supp. at 734
 
 
 [48]
 See id
 
 
 [49]
 420 F.2d 423, 427 (3d Cir. 1970) (footnote omitted) (law of Netherlands Antilles involved); accord Mobil Tankers Co. v. Mene Grande Oil Co., 363 F.2d 611, 615 (3d Cir.) (Venezuelan law), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966); Burt v. Isthmus Dev. Co., 218 F.2d 353, 357 (5th Cir.), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955); see Founding Church of Scientology v. Verlag, 536 F.2d 429, 436 (D.C.Cir.1976) (difficulty in applying German law not sufficient)
 
 
 [50]
 420 F.2d at 427
 
 
 [51]
 DeMateos v. Texaco, Inc., 562 F.2d 895, 899 (3d Cir. 1977), cert. denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). The point is made by Professor Bickel in terms of fairness to the plaintiff. See, Bickel, supra note 11, at 28 & n.68 (because premise of forum non conveniens is existence of jurisdiction, "a case will be retained whenever it is not perfectly clear that plaintiff can recover elsewhere if the facts he alleges are true")
 
 
 [52]
 Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)
 
 
 [53]
 The Supreme Court reaffirmed Klaxon in strong terms in Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975) (per curiam) (reversing appellate court determination that, as a matter of federal choice of law, a federal court could not apply the choice of law rule of the state in which it sat if that jurisdiction had no policy interest in the case). Thus the Court has, at least for now, answered scholarly criticism of Klaxon and exhortations that it be overruled. See, e. g., Baxter, Choice of Law and the Federal System, 16 Stan.L.Rev. 1, 32-42 (1963); Horowitz, Toward a Federal Common Law of Choice of Law, 14 U.C.L.A.L.Rev. 1191 (1967); cf. P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's, The Federal Courts and the Federal System 713-18 (2d ed. 1973) (making point by rhetorical questions)
 
 
 [54]
 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The Barrack rule that a transfer should work no change in the applicable law is a "general" one. The Court added this qualifier:
 (W)e do not and need not consider whether in all cases § 1404(a) would require the application of the law of the transferor, as opposed to the transferee, State. We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404(a) or if it was contended that the transferor State would simply have dismissed the action on the ground of forum non conveniens . . . .
 Id. at 639-40, 84 S.Ct. at 821 (footnote omitted). Piper does contend that a California court would have dismissed this action on the ground of forum non conveniens. This is implicit in its argument that we should now dismiss the case on that ground and that California law on this issue is the same as the federal law on which the issue has generally been argued. Both Piper and Reyno agree, however, that California's choice of law rules govern the case as to Piper. To follow the Court's caveat would, moreover, be inefficient and wasteful of judicial resources, for it would require the transferee court, after the transferor court had granted a 1404(a) transfer, to examine the transferor State's law to ascertain whether the defendant should have brought a motion to dismiss rather than to transfer in the first place. See In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973, 399 F.Supp. 1106, 1121-22 (D.Mass.1975).
 
 
 [55]
 In Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962), the Supreme Court held that transfer for improper venue under 28 U.S.C. § 1406(a) was proper whether or not the court in which the motion was filed had personal jurisdiction over the defendants. Cf. Martin v. Stokes, 623 F.2d 469 at 472 (6th Cir. 1980) ("following a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court") (citing cases). This Court applied Goldlawr by analogy to § 1404(a) and held that if lack of both venue and personal jurisdiction could not defeat a transfer, then want of the latter alone could not. United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964)
 
 
 [56]
 See Kirgis, The Roles of Due Process and Full Faith and Credit in Choice of Law, 62 Cornell L.Rev. 94, 103 (1976) (forum must have reasonable due process basis for applying own law, which does not exist if party opposing application of forum's law has no minimum contacts with forum, the transaction giving rise to the claim is not connected with the forum, or application of the forum's law would otherwise be manifestly unfair)
 
 
 [57]
 The plaintiff in the Barrack case challenged, by writ of mandamus, the district court's order transferring the case from Pennsylvania to Massachusetts. He contended that the transfer could not be, as § 1404(a) requires, "in the interest of justice," because it was likely to be accompanied by a prejudicial change in the state law to be applied. 376 U.S. at 626, 84 S.Ct. at 814. The district court had held that transfer could be ordered regardless of the possibility of a change in law, id. at 626-27, 84 S.Ct. at 814, our Court agreed with the plaintiff that it could not, see Barrack v. Van Dusen, 309 F.2d 953 (3d Cir. 1963), and the Supreme Court, disagreeing with both the trial and appellate courts, reversed. A transfer would not be unfair, it held, because "(a) change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." 376 U.S. at 639, 84 S.Ct. at 821
 
 
 [58]
 See note 54 supra
 
 
 [59]
 See, e. g., NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979)
 
 
 [60]
 479 F.Supp. 727 at 734
 
 
 [61]
 The district court relied primarily on Reich v. Purcell, 67 Cal.2d 551, 432 P.2d 727, 63 Cal.Rptr. 31 (1967); and Hurtado v. Superior Court, 11 Cal.3d 574, 522 P.2d 666, 114 Cal.Rptr. 106 (1974), while mentioning in passing Bernhard v. Harrah's Club, 16 Cal.3d 313, 546 P.2d 719, 128 Cal.Rptr. 215, cert. denied, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976), 479 F.Supp. at 735-36
 
 
 [62]
 See 479 F.Supp. at 736-37 (relying on Griffith v. United Airlines, 416 Pa. 1, 203 A.2d 796 (1964); and Lewis v. Chemetron, 448 F.Supp. 211 (W.D.Pa.1978))
 
 
 [63]
 Professor Brainerd Currie is generally considered to be the father of modern governmental interest analysis. See Bernhard v. Harrah's Club, 16 Cal.3d 313, 546 P.2d 719, 722, 128 Cal.Rptr. 215, 218, cert. denied, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976); Reese, American Trends in Private International Law: Academic and Judicial Manipulation of Choice of Law Rules in Tort Cases, 33 Vand.L.Rev. 717, 720 (1980); Brilmayer, Interest Analysis and the Myth of Legislative Intent, 78 Mich.L.Rev. 392, 392-93 (1980). Most of his writing on the subject is collected in B. Currie, Selected Essays on the Conflict of Laws (1963)
 
 
 [64]
 67 Cal.2d 551, 432 P.2d 727, 63 Cal.Rptr. 31 (1967)
 
 
 [65]
 67 Cal.2d 553, 432 P.2d at 729, 63 Cal.Rptr. at 33
 
 
 [66]
 The term was not explicitly used in that case, but the methodology was. See id. at 555-56, 432 P.2d at 730-31, 63 Cal.Rptr. at 34-35. Bernhard v. Harrah's Club, 16 Cal.3d 313, 546 P.2d 719, 722, 128 Cal.Rptr. 215, 218, cert. denied, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976)
 
 
 [67]
 Reich v. Purcell, 67 Cal.2d 551, 432 P.2d 727, 731, 63 Cal.Rptr. 31, 35 (1967), see Hurtado v. Superior Court, 11 Cal.3d 574, 581-83, 522 P.2d 666, 670-71, 114 Cal.Rptr. 106, 110-11 (1974) (false conflict between plaintiffs' state's limitation of damages and defendant's state's allowance of full recovery; full recovery allowed). The false conflicts methodology is also attributable to Professor Currie, as well as Professor Cavers, see B. Currie, supra note 62, at 189; D. Cavers, The Choice-of-Law Process 89-90 (1965), both of whom are extensively cited in Hurtado
 
 
 [68]
 Offshore Rental Co., Inc. v. Continental Oil Co., 22 Cal.3d 157, 165-66, 583 P.2d 721, 726, 148 Cal.Rptr. 867, 872 (1978); Bernhard v. Harrah's Club, 16 Cal.3d at 321, 546 P.2d at 723-24, 128 Cal.Rptr. at 219-20 (1976)
 
 
 [69]
 Offshore Rental Co., Inc. v. Continental Oil Co., 22 Cal.3d 157, 165-66, 583 P.2d 721, 726, 148 Cal.Rptr. 867, 872 (1978) (quoting Bernhard, supra note 68)
 
 
 [70]
 Id. (emphasis deleted) (quoting Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv.L.Rev. 1210, 1216 (1946))
 
 
 [71]
 Id. at 167, 583 P.2d at 734, 148 Cal.Rptr. at 872
 
 
 [72]
 Reese, Depecage: A Common Phenomenon in Choice of Law, 73 Colum.L.Rev. 58, 75 (1973); see Broome v. Antler's Hunting Club, 595 F.2d 921, 923 (3d Cir. 1979); R. Leflar, American Conflicts Law § 109, at 221-22 (3d ed. 1977)
 
 
 [73]
 See R. Leflar, supra note 72, at 222; Reese, supra note 72, at 75. The approach is also implicit in the analysis of Professor Cavers, whose work is often cited by the California Supreme Court. See D. Cavers, supra note 67, at 40-43
 
 
 [74]
 In a recent case in which the California Supreme Court adopted comparative negligence into strict liability, the underlying policy of the latter was said to be to shift the cost of injuries from defective products from consumers to manufacturers. But the court emphasized that strict liability is not absolute liability and does not make the manufacturer an insurer of his product's safety. Daly v. General Motors Corp., 20 Cal.3d 725, 733, 575 P.2d 1162, 1166, 144 Cal.Rptr. 380, 384 (1978). In addition to spreading the costs of accidents, strict liability is intended to increase a manufacturer's incentive to produce safe products. See id. at 737-38, 575 P.2d at 1169, 144 Cal.Rptr. at 387. See Calabresi, Optimal Deterrence and Accidents, 84 Yale L.J. 656 (1975) (strict liability better serves goal of optimal deterrence minimization of accident and prevention costs); Calabresi & Hirschoff Toward a Test for Strict Liability in Torts, 81 Yale L.J. 1055, 1074-84 (1972) (shift from negligence to strict liability cannot be explained simply in terms of better distribution of costs; strict liability's appeal is also in greater deterrence of harmful conduct); cf. Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1121, 1122 (1960) (one argument that has convinced courts is that supplier of goods should be responsible for the harm they cause, regardless of fault)
 
 
 [75]
 See, e. g., Wade, On Product "Design Defects" and Their Actionability, 33 Vand.L.Rev. 551, 555 (1980) (major point of controversy in America is no longer whether strict liability should be adopted, but what its precise standards should be)
 
 
 [76]
 Courts employing governmental interests analysis have not struggled long to determine that a state where plaintiff but not defendant resides has no interest in restricting recovery for wrongful death of its citizens against foreign corporations. See, e. g., Hurtado v. Superior Court, 11 Cal.3d 574, 522 P.2d 666, 114 Cal.Rptr. 106 (1974); Cf. Rosenthal v. Warren, 475 F.2d 438 (2d Cir.) (applying New York government interest analysis; New York forum would apply its own unlimited recovery rather than limitation of state of defendant where all tortious conduct occurred), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); Kuhne, Choice of Law in Products Liability, 60 Calif.L.Rev. 1, 28 (1972) ("Under a governmental-interest approach, (a) proplaintiff tendency will be conceptualized . . . by imputing a greater state interest to recovery law than to those refusing recovery.")
 
 
 [77]
 On the choice of law issue as to representative capacity, the court stated: "We . . . only have affidavits from lawyers from Scotland as to what the rules of law are in that country and thus we cannot make . . . any definitive ruling on the purpose of the Scottish law or thereby the choice of law." 479 F.Supp. at 735. It later concluded only that "it appears the law of Scotland would be applied to Defendant Piper with respect to the wrongful death laws. Under this interpretation Plaintiff would not be a proper litigant." Id. at 736
 
 
 [78]
 Fed.R.Civ.P. 17(a); see Field v. Volkswagenwerk AG, 626 F.2d 293, at 305-306 (3d Cir. 1980)
 
 
 [79]
 Rule 17(b) in full provides:
 The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except ((1) a special rule for partnerships and other unincorporated associations; and (2) bankruptcy receivers).
 (emphasis added); see General Heat & Power Co. v. Diversified Mortgage Investors, 552 F.2d 556, 557 n.1 (3d Cir. 1977) (suggesting that Rule 17(b) encompasses the state's conflict of law rules under Klaxon ); Jacobs v. Adams, 601 F.2d 176, 178-79 (5th Cir. 1979) (applying conflicts of laws rule to determine scope of power or right to bring suit).
 
 
 [80]
 The court "is held" in California as to Piper and in Pennsylvania as to Hartzell. See pp. 305-306 supra
 
 
 [81]
 Fed.R.Civ.P. 9(a) requires that a party desiring to raise an issue as to "the capacity of any party to sue . . . or the authority of a party to sue . . . in a representative capacity . . . do so by specific negative averment." The federal rules do not make clear when in the stage of a litigation lack of capacity must be averred, but because lack of capacity is a dilatory defense. Professors Wright and Miller state that it "should be raised promptly. Any unreasonable delay may encourage the court to deny the objection on the ground of prejudice." 6 C. Wright & A. Miller, Federal Practice and Procedures § 1542, at 640 (1971) (footnote omitted). See 5 Id. § 1295, at 397 (objection to party's capacity should be analogized to an affirmative defense and waived if not asserted early in the litigation by motion or responsive pleading). The record reveals that Reyno's capacity was not challenged by Piper until it joined Hartzell's motion to dismiss after the case had been transferred to the Middle District of Pennsylvania. This motion came after Piper had moved to remove the case from a California state court to a federal court, had filed its answer to the complaint, and had successfully moved to transfer the case to the Middle District of Pennsylvania
 
 
 [82]
 416 Pa. 1, 203 A.2d 796 (1964)
 
 
 [83]
 479 F.Supp. at 736-37. All three jurisdictions have contacts with or interests in the alleged tort. Scotland is the residence of the decedents and the place of the fatal crash. Hartzell manufactured the allegedly defective propeller in Ohio and it was assembled into the Piper aircraft in Pennsylvania
 
 
 [84]
 416 Pa. at 21-23, 203 A.2d at 805-06
 
 
 [85]
 Kuchinic v. McCrory, 422 Pa. 620, 624 & n.4, 222 A.2d 897, 899 n.4 (1966)
 
 
 [86]
 Griffith, 416 Pa. at 24, 203 A.2d at 807
 
 
 [87]
 Id. at 14, 203 A.2d at 802 (citing Currie, Comments on Babcock v. Jackson, 63 Colum.L.Rev. 1212, 1233 (1963))
 
 
 [88]
 Id. (citing Ehrenzweig, Comments on Babcock v. Jacksons, 63 Colum.L.Rev. 1212, 1243 (1963))
 
 
 [89]
 Id. at 14-15, 203 A.2d at 802-03 (citing Restatement (2d) Conflict of Laws §§ 379, 389a (1971) and writings of its Reporter, Professor Reese)
 
 
 [90]
 Id. at 21, 203 A.2d at 805 (footnote omitted)
 
 
 [91]
 Kuchinic v. McCrory, 422 Pa. at 624 & n.4, 222 A.2d at 899 & n.4
 
 
 [92]
 McSwain v. McSwain, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966) (citing Griffith, as well as California and New York cases)
 
 
 [93]
 439 Pa. 563, 565, 267 A.2d 854, 855 (1970)
 
 
 [94]
 Id. at 566, 267 A.2d at 856 (quoting Griffith, 416 Pa. at 21, 203 A.2d at 805)
 
 
 [95]
 There is some difference between California and Pennsylvania, on the one hand, and Ohio on the other as to the standard of proof in strict liability. Ohio has adopted in full Restatement (2d) Torts 402A, subjecting to liability one who sells a product in a defective condition "unreasonably dangerous." See, e. g., Temple v. Wean United, Inc., 50 Ohio St.2d 317, 364 N.E.2d 267, 268 (1977) (Syllabus by the Court); cf. Anton v. Ford Motor Co., 400 F.Supp. 1270 1273-76 (S.D.Ohio 1975) (reviewing products liability decisions of the Ohio Supreme Court). Pennsylvania and California have removed the "unreasonableness" requirement as being inconsistent with the policy of strict liability. See e. g., Barker v. Lull Eng. Co., Inc., 20 Cal.3d 413, 423-27, 573 P.2d 443, 449-52, 143 Cal.Rptr. 225, 231-34 (1978); Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (1978). Indeed, our Court in interpreting Pennsylvania law has repeatedly held that use in a jury charge of the Restatement 2d's "unreasonably dangerous" language is reversible error. E. g., Mattocks v. Daylin, Inc., 611 F.2d 30 (3d Cir. 1979); Bailey v. Atlas Powder Co., 602 F.2d 585 (3d Cir. 1979). Giving separate charges on the Ohio standard for Hartzell and the Pennsylvania standard for Piper need not necessarily confuse the jury