**TERSCO, INC., Plaintiff,**

v.

**E.I. DuPONT de NEMOURS AND COMPANY, Defendants.**

No. 92–4257.

United States District Court,
E.D. Pennsylvania.

Nov. 6, 1992.

Joseph R. Davison, Leonard, Tillery & Davison, Philadelphia, PA., for plaintiff.

James D. Shomper, Jr., Wilmington, DE, for defendants.

### MEMORANDUM and ORDER

BECHTLE, Chief Judge.

Presently before the court is defendant E.I. DuPont de Nemours and Company's ("DuPont") motion to dismiss the complaint of plaintiff Tersco, Inc. ("Tersco"). For the reasons set forth below, the court will dismiss with prejudice count one of the complaint only insofar as it asserts a claim for breach of an implied covenant of good faith and fair dealing and seeks punitive damages. All other aspects of count one shall proceed as stated in the complaint. In addition, the court will dismiss without prejudice count two of the complaint and count three of the complaint insofar as count three asserts a claim for breach of an express warranty. Finally, the court will dismiss with prejudice count three of the complaint insofar as it asserts a claim for breach of an implied covenant of good faith and fair dealing.

### BACKGROUND

In this diversity action, DuPont, a Delaware corporation with its principal place of business in Wilmington, Delaware, moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the claims of Tersco, a Texas corporation whose corporate headquarters are located in Philadelphia, Pennsylvania, for breach of contract, tortious interference with business and contractual obligations, and breach of express and implied warranties.

On or about November 30, 1990, Tersco and DuPont entered into a Wholesale Refrigerant Distributor Appointment and Agreement ("Agreement"). Pursuant to and as part of the Agreement, DuPont appointed and authorized Tersco to sell certain products in the United States at authorized locations, and Tersco accepted such appointment agreeing to sell such products.

Pursuant to section 12 of the Agreement, the Appointment and Agreement became effective on January 1, 1991, continued in full force and effect until December 31, 1991, and then remained effective "from year to year thereafter, unless and until terminated with at least ninety (90) days' prior written notice given by either party to the other." *See Complaint,* Exhibit A, at ¶ 12.

Tersco alleges that, on or about April 10, 1992, DuPont breached the Agreement by way of a letter, dated April 10, 1992, from Daniel J. Lauritis, a sales manager for DuPont. DuPont informed Tersco that, effective July 9, 1992, DuPont would terminate the Agreement. Tersco alleges that DuPont wrongfully terminated the Agreement on or about July 9, 1992, and refused to comply in any way with the terms of the Agreement, thus causing Tersco to suffer damages.

## MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded allegations contained in the complaint, and must construe them in a light most favorable to the plaintiff. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). The claim will be dismissed only where it appears that the plaintiff has alleged no set of facts in support of the claim which would entitle him to relief. *Id.*

## DISCUSSION

### a. *Choice of Law*

As this is a diversity case, a court sitting in the Eastern District of Pennsylvania must look to the choice of law rules of Pennsylvania to decide what law is to be applied to the Agreement. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In *Melville v. American Home Assur. Co.,* 584 F.2d 1306 (3d Cir.1978), the Third Circuit concluded that Pennsylvania had replaced the "vested rights" approach to choice-of-law analysis in contract actions with a more flexible hybrid approach combining governmental interest analysis with the grouping-of-contracts approach adopted in the Restatement (Second) of Conflict of Laws. *Id.* at 1311–12. Therefore, the state that has the most interest in settling the dispute and which is the most concerned with its outcome is the state whose law should be applied. *Id.*

In this case, Tersco's complaint concerns the interpretation of an Agreement which authorized Tersco to sell DuPont's products at "authorized locations." Importantly, pursuant to the Agreement, each authorized location to which Tersco, a corporation organized under the laws of Texas, was entitled to sell, was located in Texas. This is significant in determining which law to apply because the "state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform." *See* Restatement (Second) of Conflict of Laws, § 188, Comment on Subsection (2). Moreover, it is significant that Tersco and DuPont negotiated the Agreement in Texas because the state where such negotiations occur has an obvious interest in the conduct of the negotiations and in the agreement reached. *Id.*

Thus, both the place of contracting and the situs of performance was in Texas. *See* Restatement (Second) of Conflict of Laws, § 188(f) ("[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually apply"). Therefore, the law of Texas shall apply because Texas has the greatest interest in the outcome of this action.[1]

---

1. While Pennsylvania is not a completely "disinterested" forum, as Tersco is a qualified foreign domiciliary corporation under the Laws of the Commonwealth of Pennsylvania, its interests are outweighed by those of Texas. *Cf.* Restatement (Second) of Conflict of Laws, Comment on Subsection (2) ("The fact that one of the parties is domiciled or does business in a particular state

### b. *The Complaint*

■ In its first count, Tersco seeks compensatory and punitive damages for breach of contract alleging that DuPont's letter, dated April 10, 1992, and subsequent action constituted an anticipatory repudiation of a valid contract. In its motion to dismiss, DuPont argues that section 12 of the Agreement,[2] a termination clause which, DuPont argues, allows a party to terminate the Agreement with ninety (90) days' notice, is dispositive because DuPont complied with the notice provision. DuPont argues that the only reasonable way to construe section 12 is that the provision permitted either party to terminate the Agreement at any time so long as the party gives notice to the other party within ninety (90) days of the desired date of termination.

On the other hand, Tersco contends that the "year to year" phrase of section 12 means that a party, giving at least ninety (90) days' notice, may choose to terminate the Agreement, but such termination would become effective only as of the end of the contract year in which the notice was given. Under Tersco's interpretation, DuPont was bound for the entire renewal year of 1992, regardless of when, in 1992, it informed Tersco of its desire to terminate and could only terminate upon giving notice at least ninety (90) days prior to January 1, 1993.

■ "The first question faced in a contract interpretation is whether the contract terms are ambiguous." *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987).

The determination of whether the terms are ambiguous is a question of law in Texas. *Id.* The test for determining whether a contract is ambiguous is whether, after applying established rules of construction, the contract is reasonably susceptible to more than one meaning. *Richland Plantation Co. v. Justiss–Mears Oil Co.*, 671 F.2d 154, 156 (5th Cir.1982) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)).

At this stage in the proceedings, considering the arguments of both parties, the court finds that section 12 is unambiguous to mean that either party, giving at least ninety (90) days' notice, may choose to terminate the Agreement, but that such termination would become effective only as of the end of the year in which the notice is given. Therefore, although further evidence and discovery may indicate otherwise, the motion to dismiss count one of the complaint at this stage must be denied.[3]

■ In addition, Tersco, in its breach of contract claim, included a claim for punitive damages. However, under Texas law, Tersco is not entitled to punitive damages for a claim that sounds in contract. *See Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981). This is so even if the breach is "malicious, intentional, or capricious...." *Id.* Therefore, Tersco's claim for punitive damages under count one of the complaint will be dismissed.

■ In the second count, Tersco alleges that DuPont's breach of the Agreement tor-

---

assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance or the place where the other party to contract is domiciled or does business.").

2. Section 12 of the Agreement states in full:

**PERIOD OF AGREEMENT**
This Appointment and Agreement shall be effective as of January 1, 1991 and shall continue in full force and effect until December 31, 1991 and from year to year thereafter unless and until terminated with at least ninety (90) days' prior written notice given by either party to the other. However, either party may terminate this Appointment and Agreement at any time upon thirty (30) days' prior written notice

if the other party has not fully complied with any of the terms and conditions hereof and provided further that failure on the part DISTRIBUTOR to comply with the provisions of Schedule B or any other substantial breach shall be grounds for immediate termination. *See Complaint*, Exhibit A ("The Agreement"), at ¶ 12.

3. In its response memorandum to defendant's motion to dismiss, Tersco attaches two documents in an attempt to clarify the legal import of section 12 of the Agreement. As this is a motion to dismiss, this court has neither reviewed nor considered these documents. Nor has the court considered the arguments presented by DuPont in its reply memorandum regarding the attached letters.

tiously and intentionally interfered with Tersco's business and contractual obligations "to other unnamed parties." *See Complaint*, at ¶ 26. DuPont contends, however, that Tersco's complaint is vague and conclusory and fails to identify the business and contractual obligations with which DuPont intentionally interfered. In this manner, therefore, DuPont alleges that count two does not provide DuPont with fair notice of the basis of Tersco's claim. The court agrees.

■ The elements of a cause of action for tortious interference are: (1) the existence of a contract subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of plaintiff's damage; and (4) actual damage or loss occurred. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 664 (Tex.1990). As is evident from the first element, Tersco must show the existence of a contract subject to interference. *See Exxon Corp. v. Allsup*, 808 S.W.2d 648, 654 (Tex.Ct.App.1991) ("a cause of action for interference with contractual relations requires evidence of the existence of a contract that is subject to the alleged interference"). However, in its complaint, Tersco merely alleges intentional interference with contracts that Tersco had with other "unnamed parties."

■ Federal pleading relies on notice pleading rather than fact pleading. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The pleader must provide the defendant fair notice of what the plaintiff's claims are and the ground upon which it rests. *Id. See also Joiner Sys., Inc. v. AVM Corp.*, 517 F.2d 45, 47 (3d Cir.1975). In this case, however, Tersco's complaint has not averred with whom it had present or prospective contractual relations which were allegedly interfered with by DuPont, nor has Tersco identified these alleged relationships. "Defendants cannot be expected to respond to generalized claims for interference with unidentified relationships with unidentified individuals." *Mollinger v. Diversified Printing Corp.*, 1989 WL 115125,

at * 7, 1989 U.S.Dist. LEXIS 11655 (E.D.Pa. 1989) (Gawthrop, J.), at *21, *aff'd without op., Mollinger v. Parade Publications, Inc.*, 902 F.2d 1561 (3d Cir.1990). The *Mollinger* court continued: "To satisfy the Rule 8 requirement of fair notice, plaintiff must at least identify the specific contractual relations which defendant allegedly interfered with." *Id.* Having not satisfied its duty, Tersco's claim for tortious interference with business and contractual relations will, therefore, be dismissed without prejudice.[4]

■ Finally, Tersco alleges in count three of the complaint that DuPont breached express and implied warranties under the Agreement. DuPont's responsibility for delivery of the products under the Agreement was governed by the standard conditions of sale set forth in schedule "B" which read in pertinent part:

> Seller warrants that the products or materials (hereafter "products") delivered hereunder meet Seller's standard specifications for the products or such other specifications as may have been expressly agreed to herein. SELLER MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER EXPRESS OR IMPLIED WARRANTY, EXCEPT AS PROVIDED IN CONDITIONS 3 AND 4 HEREIN [i.e. relating to patents and to compliance with the Fair Labor Standards Act]. Buyer assumes all risk and liability resulting from use of the products delivered hereunder, whether used singly or in combination with other products.

*See Complaint*, Exhibit A, Schedule "B", at ¶ 1. In its motion to dismiss, DuPont argues that Tersco failed to specify which warranties were breached and that, alternatively, the parties expressly disclaimed both express and implied warranties.

■ Under Texas law, parties may not excuse themselves from the obligation to read what they sign and are responsible for language of a contract that is sufficient to waive all warranties. *See G–W–L, Inc. v.*

---

4. To the extent that Tersco's response to DuPont's motion to dismiss seeks to request leave to amend the complaint, the court notes that such

relief may only be granted upon a motion properly made to the court under Fed.R.Civ.P. 7(b).

*Robichaux,* 643 S.W.2d 392, 393–394 (Tex. 1982); *Pyle v. Eastern Seed Co.,* 145 Tex. 385, 198 S.W.2d 562, 564 (1946) (concluding that because parties are free to make whatever contract they desire, and parties agreed to nonwarranty clause, each party was bound thereby). Thus, where a contract specifically includes a nonwarranty disclaimer clause, a common-law contract cause of action for breach of express warranties has been waived. *Id. See also McCrea v. Cubilla Condominium Corp. N.V.,* 685 S.W.2d 755, 758 (Tex.Ct.App.1985) (waiver not permitted where such disclaimer is against public policy or some other statutory provision).

In this case, DuPont did agree in schedule "B" to an express warranty that its products would meet its own "standard specifications for the products or such other specifications as may have been expressly agreed to herein." *See Complaint,* Exhibit A, Schedule "B", at ¶ 1. That same provision waived all other express or implied warranties, except where provided.

Tersco, however, has not alleged in its complaint that the products supplied by DuPont pursuant to the Agreement failed to satisfy DuPont's own specifications or any other specifications expressly agreed upon. It is unclear, therefore, what the express warranties are to which Tersco refers in count three of the complaint and whether such warranties are ineffective pursuant to the warranty disclaimer of schedule "B". Thus, count three of the complaint will be dismissed without prejudice insofar as it asserts a claim for breach of express warranties.

▬▬ Finally, Tersco alleges that DuPont breached an implied covenant of good faith and fair dealing.[5] Texas law, however, does not recognize such an implied covenant unless a special relationship exists between the parties governed or created by a contract. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987);

*Security Bank v. Dalton,* 803 S.W.2d 443, 447–48 (Tex.Ct.App.1991) (duty of good faith is imposed in special relationships marked by shared trust or an imbalance in bargaining power, such as exists between an insured and insurer). As the Agreement in this case cannot be characterized as a "special" contract, Tersco cannot recover for a claim for breach of an implied covenant of good faith and fair dealing. *See McClendon v. Ingersoll–Rand Co.,* 757 S.W.2d 816, 819–20 (Tex. Ct.App.1988) (refusing to extend the "special" distinction to other contract relationships), *rev'd on other grounds,* 779 S.W.2d 69 (Tex.1989). Thus, count three of the complaint will be dismissed with prejudice for failure to state a claim upon which relief can be granted insofar as it asserts a claim for a breach of an implied covenant of good faith and fair dealing. Moreover, insofar as count three alleges a claim identical to that in count one, *see Complaint,* at ¶ 18(c), it will also be dismissed with prejudice.

An appropriate order follows.

### *ORDER*

AND NOW, TO WIT, this 6th day of November, 1992, upon consideration of defendant E.I. DuPont de Nemours and Company's motion to dismiss, and the response and reply filed thereto, IT IS ORDERED that said motion is *granted in part* and *denied in part.* IT IS FURTHER ORDERED that:

1. Count one of the complaint is *dismissed* with prejudice only insofar as it asserts a claim for breach of an implied covenant of good faith and fair dealing and seeks punitive damages. All other aspects of count one shall proceed as stated in the complaint.

2. Count two of the complaint is *dismissed* without prejudice.

---

5. Paragraph 33 of the complaint reads as follows:

33. Pursuant to and as part of the Agreement, Du Pont impliedly warranted and covenanted with Tersco:

(a). To carry out its obligations to Tersco under the Agreement in good faith;

(b). To deal fairly with Tersco; and

(c). To refrain from doing anything that would prevent Tersco from realizing the full benefit of good faith performance by Du Pont under the Agreement.

*See Complaint,* at ¶ 33.

3. Count three of the complaint is *dismissed* without prejudice insofar as it asserts a claim for breach of an express warranty.

4. Count three of the complaint is *dismissed* with prejudice insofar as it asserts a claim for breach of an implied covenant of good faith and fair dealing.