Rachmil and Itka ZYGMUNTOWICZ, Co–Administrators of the Estate of Michael Zygmuntowicz, Deceased

v.

HOSPITALITY INVESTMENTS, INC., Individually and Trading as Polo Bay and Touche and Hospitality Investments of Margate, Inc., Trading as Polo Bay and L.B.O.W. Corporation.

Civ. A. No. 92–CV–1613.

United States District Court, E.D. Pennsylvania.

June 28, 1993.

Memorandum Denying Certification for Appeal July 26, 1993.

Aaron D. Blumberg, Robin Locke Nagele, Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for plaintiffs.

Jerome Gamburg, Philadelphia, PA, for Hospitality Investments.

Norman E. Greenspan, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for L.B.O.W. Corp.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

### I. INTRODUCTION

The Plaintiffs, Rachmil and Itka Zygmuntowicz, Co–Administrators of Michael Zygmuntowicz' estate, initiated this wrongful death action against Hospitality Investments of Margate, Inc., and its parent company, Hospitality Investments, Inc., under 42 Pa. C.S.A. § 8301. The Plaintiffs allege that pursuant to Pennsylvania Dram Shop laws, 47 Pa.S. § 4–493, the Defendants served alcoholic beverages to Michael while he was visibly intoxicated and that it was this conduct that proximately caused his death.

Before the Court is the Defendant's motion for summary judgment. The Defendant contends that New Jersey Dram Shop laws, rather than Pennsylvania's Dram Shop laws, should govern and that the present facts warrant the entry of summary judgment in favor of the defendant.

### II. BACKGROUND

When viewing the evidence in the light most favorable to the plaintiff, the facts appear to be as follows. Michael and three friends, all Pennsylvania residents, drove down to the New Jersey shore for an evening on May 25, 1990. Once there, the four attended a "free drink" promotion offered at the Polo Bay Margate Nightclub, a club they had frequented often in the past. Within an hour and a half of arriving at the club, Michael drank approximately four beers, four shots of an unknown liquor and 6–7 mixed vodka drinks. Predictably, Michael became increasingly clumsy and raucous. At one point, he slammed a drink on the bar, spilling it and drawing the bartender's attention. The bartender asked an accompanying friend if he could control Michael. The friend replied that Michael was drunk. Nevertheless, that same bartender later served Michael one or two more alcoholic drinks. Later on that evening, Michael vomited on the beach and required assistance to walk. Shortly

after midnight, the four left to return to Philadelphia. Michael slept for a majority of the trip waking only to vomit a second time. Upon arriving at Philadelphia, Michael's friends questioned his ability to drive and unsuccessfully attempted to prevent him from driving home. Approximately ten miles later, Michael wrecked his car doing 111 miles per hour. His blood alcohol level at the time of death was .11%.

## III. DISCUSSION

Before we can broach the Defendant's motion for summary judgment, we must first decide whether Pennsylvania or New Jersey law shall govern.

### A. *Choice of Law*

 In a diversity action, this Court applies Pennsylvania's choice of law rules. *Tiernan v. Devoe*, 923 F.2d 1024, 1033 (3d Cir.1991) *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Therefore, we must first examine the policies and governmental interests underlying the competing laws in order to determine whether a "false conflict" exists. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991). A false conflict exists where only one jurisdiction's interests would be impaired by applying the competing jurisdiction's law. *Id.*[1] In such a case, we must apply the state's law whose interests would be hampered if its law were not applied. *Id.*

██ We find that after comparing the competing dram shop laws, Pennsylvania's law favors finding liability and is better able to achieve both states' policies and interests. Additionally, the Defendant specifically targeted the Pennsylvania market and should, therefore, have expected and planned for possible suits under Pennsylvania law.

Therefore, we must conclude that Pennsylvania's law governs in this case.

██ Both Pennsylvania and New Jersey dram shop laws are similar in that both would find liability for the negligent service of alcohol. Pennsylvania's law is based upon the common-law principle that any violation of the statute constitutes negligence *per se. Majors v. Broadhead Hotel*, 416 Pa. 265, 268, 205 A.2d 873 (1965). The pertinent statute provides:

It shall be unlawful . . . (1) for any licensee or the board, or any employee, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given to any person visibly intoxicated. . . .

47 Pa.S. § 4–493. Thus, if the plaintiff establishes that the defendant sold or permitted to be sold alcoholic beverages to a visibly intoxicated person, the conduct is negligent *per se. Majors*, 416 Pa. at 268, 205 A.2d 873. If that conduct proximately caused the plaintiff's injury, then the defendant is liable. *Id.*

██ Similarly, a licensed alcoholic beverage server in New Jersey may be held liable for a patron's injuries if 1) the licensee served alcohol to a visibly intoxicated person; 2) the negligently service of alcohol proximately caused the patron's injuries; and 3) the injuries were foreseeable. NJSA 2A:22A–5.

██ Additionally, the primary purpose behind both laws is identical: to protect an individual's rights from the harm caused by the negligent service of alcohol. *see infra.* Specifically, Pennsylvania purports to protect society in general and the intoxicated persons themselves from their inability to exercise due care. *Schelin v. Goldberg*, 188

---

1. In contrast, a "true conflict" arises when the interests of both jurisdictions would be harmed if its law were not applied. *Lacey*, 932 F.2d at 187. If a true conflict exists, then the court must apply the "most significant relationship" test in order to determine which law should govern. *See Id.* Some courts ignore the distinction and merely look for a conflict of laws before applying the most significant relationship test. *See Buckley v. McGraw–Hill, Inc.*, 782 F.Supp. 1042, 1046 (W.D.Pa.1991). The distinction appears to lie in the subsequent step once the court determines if a conflict exists. *Contrast Lacey*, 932 F.2d at 187 and *Stevens v. Cessna Aircraft Co.*, 599 F.Supp. 481, 483 (1984) (courts must eliminate false conflicts) with *Rosen v. Tesoro Petroleum Corp.*, 399 Pa.Super. 226, 582 A.2d 27, 30 (1990) (courts must apply most significant relationship test if there is a true conflict) with *Buckley*, 782 F.Supp. at 1046. In all cases, however, courts examine the policies and governmental interests in order to determine if a conflict of laws exist.

Pa.Super. 341, 146 A.2d 648, 652 (1958); *see also Majors,* 416 Pa. at 268, 205 A.2d 873 (finding in part that the statute was designed to protect the interests of another). In comparison, New Jersey law proposes to "protect the rights of persons who suffer loss as a result of the negligent service of alcoholic beverages ..." NJSA 2A:22A–2. The New Jersey legislature's secondary purpose was to improve the state's "alcoholic beverage liability insurance market by providing a balanced and reasonable procedure for allocating responsibility for such losses." *Id.*

A false conflict arises, however, because New Jersey's law is more restrictive in finding liability. First, New Jersey law requires that the plaintiff prove that the defendant licensee negligently served alcohol to a visibly intoxicated person. NJSA 2A:22A–5(b). Pennsylvania has found servers to be negligent *per se* if they merely served alcohol to a visibly intoxicated person. *Majors,* 416 Pa. at 268, 205 A.2d 873. Secondly, New Jersey's law applies only to licensed alcoholic beverage servers. NJSA 2A:22A–5. Pennsylvania's law, in contrast, applies to anyone capable of selling or furnishing alcoholic beverages. 47 Pa.S. § 4–493(1). Lastly, New Jersey allows contributory negligence as a defense whereas Pennsylvania does not. NJSA 2A:22A–6.

Because of the very nature of a false conflict, courts select the law that favors finding liability. *see e.g. Lacey,* 932 F.2d 170. In *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 154 (3d Cir.1980) (reversed on other grounds), representatives of several Scottish citizens who were killed in an airplane crash in Scotland sued two American manufacturers in a products liability case. After examining the competing policies and interests, the court found that a false conflict existed between Pennsylvania's strict liability standard and Scotland's negligence laws. *Id.* at 170. It found that Scotland favored the negligence standard in order to encourage industry within its borders. *Id.* at 167. In contrast, Pennsylvania adopted the strict liability standard to protect its citizens and to induce manufacturers to be more careful. *Id.* The 3rd Circuit held that Pennsylvania law governed, reasoning that Pennsylvania's

law favored finding liability, achieved both states' purpose in protecting its citizens and would not impair Scotland's promotion of industrial growth. *Id.* at 168–69.

Similarly, Pennsylvania's strict liability dram shop law inherently favors finding liability more readily than New Jersey's negligence standard. Additionally, under Pennsylvania's strict liability standard, a violation of any of the relevant drams shop laws warrants the finding of liability. *see Majors,* 416 Pa. at 268, 205 A.2d 873. Here, the Plaintiffs allege two grounds for finding liability: in addition to the negligent service of alcohol to Michael, the Plaintiffs assert that the Defendants violated a New Jersey statute prohibiting the unlimited service of alcohol for one fixed price. NJAC 13:2–23.16 and Plaintiff's Exhibit C. Pennsylvania law allows consideration of both allegations in determining liability. New Jersey law, in contrast, limits the liability determination only to the inquiry surrounding the negligent service of alcohol. NJSA 2A:22A–5(b).

Secondly, Pennsylvania law allows the Plaintiffs to include Hospitality Investments, Inc. in the suit. 47 Pa.S. § 4–493(1). The Plaintiffs allege that since neither Hospitality Investments, Inc., nor Hospitality Investments of Margate own liability insurance, the Plaintiffs must recover from the assets of both corporations in order to satisfy a potential judgment. New Jersey law, on the other hand, would limit the recovery by excluding Hospitality Investments from the suit since Hospitality Investments is not a licensed alcoholic beverage server. *See* NJSA 2A:22A–5.

Additionally, Pennsylvania law does not detract from the New Jersey legislature's secondary purpose of improving its liability insurance market. The legislature sought to avoid an environment where the lack of insurance would adversely effect patrons and third parties who were injured as a result of the negligent service of alcohol. *Id.* The legislature proposed to induce establishments into obtaining insurance and adopting preemptory behavior by creating predictability in the circumstances under which a tavern can be held liable. *Id.*

Thus, we find it significant that the Defendants actively pursued Pennsylvania residents as patrons. In *Sommers v. 13300 Brandon Corp.*, 712 F.Supp. 702, 703 (N.D.Ill.1989), an Indiana resident injured in an automobile accident in Indiana sued an Illinois tavern for negligently serving alcohol to the driver of the car. The defendant moved to dismiss the claim on the grounds that Illinois law did not recognize the claim and that the statute of limitations had run on any statutory claim. *Id.*

The court held that Indiana law governed, finding that Indiana law provided for a cause of action. To the extent that it would find the tavern liable, Indiana law was consistent with Illinois policy. *Id.* The court also found it significant that since the tavern was near the Indiana–Illinois border, it should have expected Indiana customers and the potential for a suit under Indiana law. *Id.* at 706.

Likewise, by consciously catering to the Pennsylvania market, the potential for a suit under Pennsylvania law becomes predictable. The Defendants actively solicited the Philadelphia crowd, specifically the Italian and Jewish market, by mailing promotional flyers to Philadelphia residents. Plaintiff's Brief, Exhibit J, pp. 2–4; *see also* Plaintiff's Brief, Exhibit A. Having taken advantage of the Pennsylvania market, it is reasonable for the Defendant to plan for and expect a suit under Pennsylvania's strict liability standard.

### B. *Motion for Summary Judgment*

Having decided that Pennsylvania law governs, we now address the Defendant's motion for summary judgment. Summary judgment may be properly granted if, when viewed in a light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact. *Johnson v. Harriss*, 419 Pa.Super. 541, 615 A.2d 771, 774–75 (1992); *McDonald v. Marriott Corp.*, 388 Pa.Super. 121, 564 A.2d 1296,

1297–98 (1989). Once a motion for summary judgment is made and supported, it is the non-moving party's responsibility to show that genuine issue of fact exists. *Id.* Thus, under Pennsylvania law, in order for the plaintiff to avoid the summary judgment, he must demonstrate sufficient issue of fact that 1) the defendant served him alcoholic beverages while he was visibly intoxicated and 2) that this conduct proximately caused the injuries. *Id.*

After viewing the evidence in a light most favorable to the non-moving party, we must conclude that there is genuine a issue of fact that 1) the Defendant did serve alcoholic beverages to the Plaintiff while he was visibly intoxicated and 2) that this conduct proximately caused the death. Therefore, for the reasons outlined below, the Defendant's motion for summary judgment must be denied.

■ Although the Pennsylvania statute does not define visibly intoxicated, the statute emphasizes visible, physical manifestations. *Laukemann v. Com., Pa. Liquor Control Bd.*, 82 Pa.Cmwlth. 502, 475 A.2d 955, 956 (1984). Thus, the statute does not hold the licensee liable for any physical manifestations such as an elevated blood alcohol level that are not externally apparent. *Id.*, 475 A.2d at 956–57. Such visible manifestations include loud and boisterous behavior, bloodshot eyes, poor coordination and slurred speech.[2] *Id.* at 955.

The court in *McDonald v. Marriot Corp.*, 388 Pa.Super. 121, 564 A.2d 1296, 1299 (1989) granted the defendant's motion for summary judgment finding that even if the plaintiff was visibly intoxicated, her intoxication was apparent to no one else. No one had asked her to leave, or to keep quiet, or even to quit drinking. Moreover, the plaintiff did not allege whether she exhibited this behavior before she was served her last drink or if anyone let alone an employee saw her exhibit any such behavior. *Id.*

**2.** The Pennsylvania Supreme Court has indicated that affidavits that attempt to "relate back," based on blood alcohol levels should be used guardedly. *Johnson,* 615 A.2d at 776. Courts are wary of allowing medical testimony of what the average person's reaction might have been base on a blood alcohol concentration to create a genuine issue of fact as to visible intoxication. *Id.*

■ In contrast, the Plaintiff in this case presents sufficient evidence that Michael was visibly intoxicated and that the Defendant subsequently served him alcohol while he was visibly intoxicated. First, Michael's behavior was sufficiently loud and obnoxious to attract the attention of one of the Club's bouncers. Plaintiff's Brief, Exhibit K. Additionally, at one point, he slammed a drink on the bar and spilled it, catching the bartender's attention. Plaintiff's Brief, Exhibit G, p. 2. The bartender asked an accompanying friend if he could control Michael's behavior and the friend replied that Michael was drunk. *Id.* Secondly, following that incident, the bartender continued to serve one or two additional alcoholic drinks to Michael. *Id.; see also* Plaintiff's Brief, Exhibit K.

■ The Plaintiff has also raised a genuine issue of fact of whether the Defendant's conduct proximately caused the injury. Defendant contends that throwing up twice, two and one-half hours of sleep and successfully driving ten miles at a speed of 110 miles-per-hour cannot be the result of serving alcohol to a visibly intoxicated person. Pennsylvania law, however, merely requires that the licensee's conduct be a substantial factor in causing harm to another. *Majors,* 416 Pa. at 270, 205 A.2d 873. The licensee need not have foreseen nor should have foreseen the extent or manner of harm in order to be held liable. *Id.*

■ Here, Michael appeared to be intoxicated up to the point he entered his car. During the drive back from the bar, he at one point got out of the car to vomit. Plaintiff's Brief, Exhibit K. His friends had to retrieve him because he wandered onto the highway oblivious to any danger. *Id.* Ten minutes later, Michael vomited a second time that evening out of the car window. His friends felt that his condition was such that it did not appear that he could drive and were sufficiently concerned that one of them offered to follow him home. *Id.* Michael, however, did not respond and left very quickly before anyone had a chance to follow him. *Id.* The police estimated the Plaintiff's speed at the time of the wreck at 111 miles-per-hour. Plaintiff Brief, Exhibit S, p. 6. Finally, the coroner reported a blood alcohol level at the time of death as .11%.

Under Pennsylvania's dram shop law, in order for the Plaintiffs to avoid a summary judgment, they must demonstrate a genuine issue of fact that the Defendant served alcohol to Michael while he was visibly intoxicated and that it was that conduct that proximately caused the accident. When viewed in a light most favorable to the Plaintiffs, the evidence supports the Plaintiffs' claim that Michael was visibly intoxicated, the Defendant did serve him alcohol after he was visibly intoxicated and it was that conduct that proximately led to Michael's death. We find, therefore, that a sufficient issue of fact remains so as to preclude the entry of summary judgment in the Defendant's favor.

### ORDER

AND NOW, this 28th day of June, 1993, upon consideration of the Defendant's Motion for Summary Judgment and the Plaintiffs' response thereto, it is hereby ORDERED that the Defendant's Motion for Summary Judgment is DENIED.[3]

### MEMORANDUM AND ORDER ON MOTION TO CERTIFY FOR APPEAL

Michael Zygmuntowicz, a Pennsylvania resident, died in an automobile accident that occurred in Pennsylvania allegedly as a result of the negligent service of alcohol in the New Jersey based nightclub, Polo Bay. Plaintiffs, Michael's parents, sued Defendants to recover damages alleging violations under Pennsylvania's Dram Shop law, 47 Pa.S. § 4–493. Defendants subsequently moved for summary judgment asserting that New Jersey's dram shop law should control. By order dated June 28, 1993, this court denied Defendants' motion for summary judgment finding instead that Pennsylvania law governed the case.

---

**3.** Pursuant to Pennsylvania's choice of law rules, we reiterate that the balance of the competing state's policies and governmental interests favor the application of Pennsylvania law. This Court must conclude, therefore, that Pennsylvania law governs in this case.

Defendants now move to amend the June 28 Order pursuant to 28 U.S.C. § 1292(b). Specifically, Defendants assert that the conflict of law issue involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1291 grants courts of appeal jurisdiction over appeals arising from a district court's final order. Section 1292(b) creates a narrow exception to § 1291 by allowing the district court to certify an interlocutory order for immediate appeal. Section 1292(b), however, requires that the order from which the appeal is taken must 1) involve a controlling question of law; 2) offer grounds for a substantial difference of opinion; and 3) be of a nature that an immediate appeal would materially advance the ultimate termination of the litigation. *Urbach v. Sayles,* 779 F.Supp. 351, 353 (D.N.J.1991) *citing Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974).

■ It is well established that federal law expresses a strong policy against piecemeal appeals. *Freeman v. Kohl & Vick Machine Works, Inc.,* 673 F.2d 196, 201 (7th Cir.1982). The Third Circuit has held that certification is to be used in exceptional cases where an immediate appeal would avoid protracted and expensive litigation. *Milbert v. Bison Laboratories,* 260 F.2d 431, 433 (3d Cir.1958). Section 1292(b) was not intended to open the floodgates to a vast number of interlocutory appeals in the course of ordinary litigation. *Id.* Certification is the exception, not the rule, and is left to the court's sound discretion. *Caruso v. Peat, Marwick, Mitchell & Co.,* 717 F.Supp. 218, 223 (S.D.N.Y.1989).

Pursuant to Third Circuit's admonitions, we find that an immediate appeal would not serve to avoid protracted and expensive litigation. *See Milbert,* 260 F.2d at 433. While the conflict of laws inquiry could constitute a controlling issue of law,[1] we do not, however, find that an interlocutory appeal would materially advance the litigation's ultimate termination or that there even exists substantial grounds for differences of opinion. For reasons outlined below, we must deny Defendants' motion to amend the order for certification for immediate appeal.

■ First, section 1292(b) limits certification to those orders where the court believes that an immediate appeal would materially advance the litigation's ultimate conclusion. This requirement ultimately requires the court to make predictions concerning the litigation's outcome. *In re Magic Marker Securities Litigation,* 472 F.Supp. at 438. Although the moving party is not required to demonstrate that an interlocutory appeal would certainly expedite the case, he should advance something more than mere conjecture that certification would substantially reduce time and expense. *Id.* at 438–39.

In *In re Magic Marker Securities Litigation,* the defendants supported their motion for an interlocutory appeal with reasoned predictions on how an immediate appeal could tangibly expedite the case's conclusion. 472 F.Supp. at 439. Although the court found the predictions erroneous, it examined whether an immediate appeal would 1) obviate the need for a trial; 2) eliminate complex issues thereby greatly simplifying the trial; and 3) eliminate issues thus making discovery much easier and less costly. *Id.; see also Burt on Behalf of McDonnell Douglas v. Danforth,* 742 F.Supp. 1043, 1054 (E.D.Mo. 1990) (court granted the interlocutory appeal because the court's order potentially eliminated an entire count and greatly restricted another).

■ Here, Defendants offer no substantial grounds to color their assertion other than the plain language of § 1292(b). Not-

---

1. The Third Circuit has defined "controlling question of law" to encompass every order which, if found to be erroneous, constitutes a reversible error. *In re Magic Marker Securities Litigation,* 472 F.Supp. 436, 438 (E.D.Pa.1979) *quoting Katz,* 496 F.2d at 755. This court's selection of Pennsylvania law over New Jersey law, if found to be erroneous, could prejudice the Defendant. Under New Jersey's dram shop laws, Plaintiffs must overcome the stiffer negligence inquiry rather than Pennsylvania's strict liability standard. Additionally, assuming that the Defendant is still found liable under New Jersey law, Plaintiff is subject to their contributory negligence inquiry thus potentially mitigating the damages.

**354**

withstanding, an immediate appeal of this court's conflict of laws decision will not materially expedite the case's ultimate termination. Assuming that our choice of law was found to be incorrect, this wrongful death action involves a discrete set of issues that would be unaffected by the selection of New Jersey law. New Jersey law still provides a cause of action and thus does not obviate the need for trial. It will not eliminate any issues, make discovery easier, nor make the trial less complex. If there is any impact, New Jersey law will slightly complicate the trial to the extent that the negligence inquiry is more involved than Pennsylvania's strict liability standard and that the jury would be faced with determining contributory negligence.

Secondly, although Defendants allege differences of opinions concerning the conflict of laws issue, we cannot find grounds sufficiently substantial to warrant an interlocutory appeal. In *In re Magic Marker Securities Litigation*, 472 F.Supp. at 438, the court acknowledged that the issue comprising the interlocutory order was plainly controversial and offered substantial grounds for differences of opinion. In the original order, the court invited appellate review by stating that the court of appeals might "view the matter differently" than he did. *Id.* The court also found that both parties submitted compelling arguments that rendered the decision difficult to reconcile. *Id.*

Unlike in this case, we did not reach that level of plain doubt in rendering our conflict of law decision. Pennsylvania's choice of law rules provides a clear standard by which to determine the controlling law and given the case's circumstances, the selection of Pennsylvania law was compelling.

Because Defendants failed to hurdle the stringent requirements established by § 1292(b), we find that an appeal at this juncture would only serve to delay a relatively straight forward wrongful death case already ripe for trial. We must, therefore, deny the Defendants' motion to amend for certification for an immediate appeal.