**AIRCRAFT GUARANTY CORPORATION, Plaintiff,**

v.

**STRATO–LIFT, INC. and Kenneth F. Goodrich d/b/a K.F. Goodrich Associates, Inc., Defendants.**

**Civil Action No. 96–5513.**

United States District Court, E.D. Pennsylvania.

Jan. 17, 1997.

B. Edward Williamson, J.W. Beverly, Dow, Cogburn & Friedman, P.C., Houston, TX, Anthony L. Marchetti, Jr., Hunt & Scaramella, P.C., Cherry Hill, NJ, for Plaintiff.

Richard G. Placey, Richard M. Donaldson, Montgomery, McCracken, Walker & Rhodes, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

This diversity action concerns an alleged letter agreement between Plaintiff Aircraft Guaranty Corporation ("AGC") and Defendant Kenneth F. Goodrich d/b/a K.F. Goodrich Associates, Inc. ("Goodrich") on behalf of Defendant Strato–Lift, Inc. ("SLI") for the sale of a used Cessna Citation II business jet (the "Airplane"). AGC, the purchaser, alleges that Defendants breached the agreement (the "Contract") by failing to allow the allegedly agreed upon pre-purchase inspection to be completed. AGC now seeks specific performance of the Contract or, in the alternative, damages, and attorney's fees under a Texas statute [1] that provides for the recovery of reasonable attorney's fees in contract actions. SLI has counterclaimed for breach of contract, misrepresentation and estoppel.

Before the Court is Defendants' Motion for Partial Summary Judgment on AGC's attorney's fees claim based on choice of law. For the following reasons, we agree with Defen-

---

1. The statute is Texas Civil Practice and Remedies Code § 38.001, which provides in relevant part that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." Tex. Civ. Prac. & Rem.Code § 38.001 (West 1996).

dants that Texas law does not apply to this case and enter summary judgment on Count II accordingly.

## BACKGROUND

Though the parties vigorously contest the relative significance of the facts underlying this action, the facts themselves are largely undisputed.

Sometime during the summer of 1995, SLI, a Pennsylvania corporation with its principal place of business in Morgantown, Pennsylvania, decided to sell the Airplane, which SLI had used for business travel. In July of 1995, SLI retained Goodrich, a sole proprietorship with its only place of business in New Milford, Connecticut, to broker the sale of the Airplane. Goodrich placed advertisements in several media with national and international distribution, and never specifically targeted either the Texas market generally or AGC in particular.[2]

AGC is a Delaware corporation with its principal place of business in Houston, Texas.[3] AGC's President, Mr. Connie Wood ("Wood"), initiated the first contact with Goodrich regarding the Airplane on December 18, 1995 when Wood was in Europe. This correspondence was faxed from Wood in Europe to Goodrich in Connecticut and, though the address appearing in the letterhead was AGC's Texas address, requested that Goodrich reply by fax to AGC's office in Germany. Wood indicated in the letter that AGC was inquiring about the Airplane on behalf of a trust client, subsequently identified as Bernard Van Milders B.V., of Antwerpen, Belgium ("Van Milders"). Goodrich responded to this initial inquiry by fax directed to AGC's European office. When Goodrich could not complete the transmission, however, he faxed the response to AGC's Houston office, whereupon the document was retransmitted to Wood in Europe. The address above the salutation in Goodrich's response was AGC's Houston address.

On December 24, 1995, Goodrich received AGC's initial offer to purchase the plane on behalf of Van Milders. The offer was signed by Wood in Europe, faxed to Goodrich in Connecticut, and though AGC's Houston address again appeared in the stationery's letterhead, the offer instructed that any response be directed to AGC's European office. Goodrich acknowledged his receipt of the offer the following day by fax. This correspondence, and the subsequent faxes negotiating various terms of the agreement, were routed to AGC's European office through Texas and listed AGC's address as Texas. Goodrich communicated with SLI personnel in Pennsylvania during this period of negotiations.

On December 27, 1995, Goodrich received the fax from AGC that is the alleged Contract sued on in this action. This offer, like the one before it, was signed by Wood in Europe, faxed to Goodrich in Connecticut, and printed on stationery with AGC's Hous-

2. Defendants have certain other connections to Texas apart from the events relating to this action. SLI has a California-based sales representative whose territory covers several western and southwestern states including Texas and an independent dealer in Texas that sells SLI's line of equipment. SLI has also conducted national advertising campaigns that have reached Texas. Goodrich has advertised other aircraft for sale in national and international publications that are distributed in Texas.

3. The evidence that AGC's principal place of business is its Houston office is not unequivocal. AGC's President Connie Wood ("Wood") states in his affidavit that

> AGC's principal office has been in Houston, Texas since the formation of the corporation. Most of the business of AGC is conducted at the Houston office. Most of the business cor-

> respondence of AGC is either directed from or routed through the Houston office. I am frequently in Houston and conduct business from AGC's office.

Wood Decl. ¶3. AGC's Vice President William Walker ("Walker") testified, however, that AGC does not even have its own office space in Houston, but merely pays Walker's law firm a "monthly fee" to share its suite. (Walker Dep. at 28). Walker also noted that this office is staffed only by "contract consultants," namely Walker and his secretary, who are paid to handle administrative work. *Id.* at 23–24.

As this is a motion for summary judgment, we view all facts in the light most favorable to AGC and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Accordingly, we find for present purposes that AGC's principal place of business is Houston.

ton address in its letterhead, but once more instructed that Goodrich's response be directed to AGC's European office. Goodrich signed the Contract on behalf of SLI and faxed it back to Wood in Europe again via Houston. The Contract did not contain a choice of law provision, nor did it specify a venue in which claims relating to it were to be brought, and no performance called for in the Contract was to take place in Texas. The only place specified in the letter is Oklahoma City, Oklahoma, where AGC was to deposit $50,000 upon SLI's acceptance of its offer. Wood was in Houston when he caused this deposit to be escrowed.

Wood returned to the United States from Europe on December 28, 1995, but did not arrive in Texas until January 2, 1996. Shortly thereafter, discussions commenced regarding the Contract's provision for a pre-purchase inspection of the Airplane at AGC's "expense and discretion .... to be conducted at a disinterested third party maintenance facility." (Contract, ¶ 4, 5). After several phone conversations and faxes, Goodrich (still in Connecticut) and Wood (now in Texas) agreed that a CESSCOM Phase V inspection would be conducted at the AMR Combs facility in Birmingham, Alabama. Wood then left for Alabama on January 6, 1996, and returned to Europe one week later.

Disputes concerning the scope and duration of the prepurchase inspection prompted SLI to terminate the Alabama inspection and have the plane reassembled and flown to Pennsylvania for an inspection alleged by Defendants to comport "with the terms of the alleged letter agreement and intentions of the parties." Defs.' Mem. at 8. After the Pennsylvania inspection was completed, Goodrich informed AGC that the Airplane was available for purchase under the terms of the December 27 letter, plus costs of inspection, but AGC did not tender the remainder of the purchase price. Defendants subsequently had "various communications" with AGC's Texas office—specifically, Mr.

Walker, its attorney and Vice President—regarding the Airplane. The dispute that ensued resulted in this instant lawsuit.

This action was filed in Texas state court on April 10, 1996, and removed to the United States District Court for the Southern District of Texas, Houston Division, pursuant to a Notice of Removal filed May 24, 1996. After Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction, and the Court denied Plaintiff's Motion to Continue Submission of Defendants' Motion, AGC filed an Unopposed Motion to Transfer Venue. This action was transferred to this Court pursuant to an order dated July 22, 1996, though neither Plaintiff's Motion nor the Order granting it specifies whether the transfer was made under 28 U.S.C. § 1404(a) or § 1406(a).

## DISCUSSION

Defendants move for summary judgment on AGC's attorney's fees claim on the grounds that Texas law does not apply to this case. The Motion therefore requires that we apply the relevant choice rules to determine whether Texas provides the substantive law for resolving this dispute. As we discuss *infra*, such an analysis necessarily involves a comparison of Texas's interests in and connections to this matter to those of other jurisdictions. If, however, we conclude that Texas law does not apply, we need not decide whose law does. Because neither Pennsylvania nor Connecticut, the two primary alternatives, has an attorney's fees statute equivalent to that of Texas, the propriety of summary judgment on Count II is dictated solely by the applicability of Texas law to this case.

## I. The Applicable Choice of Law Analysis

The parties agree that we should apply Pennsylvania's choice of law rules here.[4] We must therefore first determine whether there is a false conflict between the

---

4. There is a question as to whether the choice of law rules of Texas or Pennsylvania apply to this case. Because (1) this issue is of technical significance only given the similarity of the choice of law analysis for contract actions in the two states, and (2) AGC does not dispute Defendants'

argument that Pennsylvania rules govern, we apply Pennsylvania's analysis. *See American Intern. Underwriters v. Zurn Industries*, 771 F.Supp. 690, 694–95 (W.D.Pa.1991)(highlighting similarity of choice of law rules for contract actions in Texas and Pennsylvania).

ostensibly competing bodies of law. *LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir.1996). A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* (citing *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991)). In the event of a true conflict, we must engage in Pennsylvania's "hybrid" choice of law analysis, *Tersco, Inc. v. E.I. DuPont de Nemours And Co.,* 879 F.Supp. 445, 447 (E.D.Pa.1992), and apply the substantive law of the jurisdiction that has "the most interest in the problem and which is the most intimately concerned with the outcome." *PECO Energy Company v. Boden,* 64 F.3d 852, 855 (3d Cir.1995). In contract actions, courts examine "(1) the place of negotiation, contracting, and performance of the contract in question; (2) the location of the subject matter of the contract; and (3) the parties' citizenship." *Kramer v. Nowak,* 908 F.Supp. 1281, 1285 (E.D.Pa.1995) (citations omitted). We must then consider the effect of the choice of law on the policy interests of the rival jurisdictions. *Compagnie des Bauxites v. Argonaut–Midwest Ins.,* 880 F.2d 685, 688–89 (3d Cir.1989).

## II. The Choice of Law Analysis in this Case

### A. Nature of the Conflict

█ AGC argues that there is a false conflict between Tex. Civ. Prac. & Rem.Code § 38.001 and the laws of Pennsylvania and Connecticut, which do not provide a similar entitlement to attorney's fees in contract actions. AGC contends, first, that both Pennsylvania and Connecticut enforce contractual provisions providing for the recovery of attorney's fees, thus neither state can be said to have a "strict prohibition or strong public policy against recovery of attorney's fees for breach of contract." Pl.'s Mem. at 9. Therefore, only Texas' interest in providing its citizens with a full measure of recovery would be impaired by the application of either of the competing jurisdictions' laws. AGC argues also that, under Pennsylvania's choice of law rules, a court should favor the law of the jurisdiction whose law allows the plaintiff the greater recovery.

These arguments are not persuasive. Texas's statutory entitlement to attorney's fees in contract actions stands in direct contrast to the affirmative policy decisions of Pennsylvania and Connecticut not to provide such an entitlement. Pennsylvania and Connecticut have chosen to let contracting parties decide how fees will be allocated in the event of litigation or bear their own expenses in the absence of an agreement to the contrary. The reasons for this choice are well-established and do not require recitation here. *See* 22 Am.Jur. § 611. Pennsylvania and Connecticut are not acting inconsistently with these reasons by enforcing contractual provisions allowing for the recovery of fees, but merely giving effect to the intent of parties to particular agreements.

Moreover, we find the argument that Pennsylvania's choice of law rules favor the jurisdiction whose law provides the greater measure of recovery to be groundless. *See, e.g., LeJeune,* 85 F.3d 1069 (holding that, under Pennsylvania's choice of law rules, Delaware had greater interest in and connections to dispute than Pennsylvania, thereby denying plaintiff availability of strict products liability cause of action). Nothing in our decision in *Zygmuntowicz v. Hospitality Investments, Inc.,* 828 F.Supp. 346 (E.D.Pa. 1993), cited by AGC in support of its argument, is to the contrary.

### B. The Competing Jurisdictions' Connections to and Interests in this Dispute

Because we find that the governmental interests of Texas would be impaired by the application of Pennsylvania or Connecticut law, and vice versa, we must now decide if Texas has the most interest in the dispute and is the state most intimately concerned with its outcome. *PECO Energy Co.,* 64 F.3d at 855.

█ Texas clearly had little more than an incidental connection to the negotiation of the Contract as allegedly agreed to on December 27, 1995. From AGC's initial fax to Goodrich to the execution of the December 27 letter, Goodrich was in Connecticut, Wood was in Europe and the principals on whose behalf they negotiated were in Pennsylvania and

Belgium, respectively. Indeed, Wood did not even arrive in Texas until January 2, 1996. That AGC's Texas address appeared on both the letterhead on AGC's faxes to Goodrich and the letters Goodrich faxed in response, facts to which AGC attaches some importance, does not make Texas in any way the *place* of these negotiations. The only sense in which any negotiations of the December 27 Contract can be said to have occurred in Texas is that Goodrich routed several faxes to Wood in Europe via AGC's Houston office, and this connection is plainly insignificant in relation to those of the competing jurisdictions, particularly Connecticut.

AGC places great emphasis, however, on the communications between Goodrich and Wood while Wood was in Texas regarding the pre-purchase inspection provisions of the Contract. Plaintiff argues that the agreement that resulted—namely, that a CESSCOM Phase V inspection would be performed at the AMR Combs facility in Alabama—was "critical to the performance of the Contract" and, in fact, the contract was not "finalized" until this agreement was reached. Pl.'s Mem. at 6. Even assuming that this agreement represented a formal modification of the Contract rather than the performance of one its terms, the provisions for the pre-purchase inspection constitute only a small part of the agreement as a whole. Indeed, only two of the Contract's eleven paragraphs concern the inspection. That these provisions happen to be at the crux of this dispute does not endow them any greater significance for choice of law purposes. Further, attaching importance to this subsequent agreement weighs as much in favor of Connecticut as it does Texas.

The remaining factors also do not weigh in favor of the application of Texas law. The Contract was executed by Wood in Europe on behalf of its Belgian trust client and by Goodrich in Connecticut on behalf of SLI.[5] No performance was specified by the Contract to occur in Texas, nor did any performance subsequently take place there as the pre-purchase inspections occurred in Ala-

bama and Pennsylvania, and AGC's deposit was escrowed in Oklahoma. Likewise, the Airplane was never in Texas at any time after negotiations for its sale commenced. It was hangared in Pennsylvania prior to being flown to Alabama for the pre-purchase inspection, and was flown back to Pennsylvania when problems arose in Alabama. *Cf. Tersco*, 879 F.Supp. at 447 (E.D.Pa.1992)(applying Texas law where Texas was place of negotiations, contracting and performance). Finally, the parties are citizens of each of the concerned jurisdictions.

We also find that the balance of the competing policy interests implicated here does not weigh in favor of the application of Texas law. Texas assuredly has an interest in affording its corporate citizen the full measure of recovery available under its law. But Pennsylvania and Connecticut have a similar interest in preventing their corporate citizens from paying what, in the views of their respective legislatures and courts, should not be awarded as a matter of entitlement in contract actions. Further, to the extent that these states do not provide an entitlement to attorney's fees because such awards make litigation even more burdensome, *see* 22 Am. Jur.2d § 611, these concerns are clearly at play in this action.

## CONCLUSION

Based on the foregoing, we find that, under Pennsylvania's choice of law rules, both Pennsylvania and Connecticut have (1) more significant contacts with the Contract than does Texas, and (2) policy reasons for not awarding attorney's fees in contract actions that are at least as implicated here as are Texas' reasons for providing for the recovery of such fees. We therefore hold that Tex. Civ. Prac. & Rem. § 38.001 does not govern this dispute, and because there can be no genuine issue of material fact relating to AGC's claim for attorney's fees under this statute, enter summary judgment on Count II of AGC's Complaint in Defendants' favor. An appropriate Order follows.

---

**5.** Again, assuming *arguendo* that the subsequent agreement concerning the nature and place of the pre-purchase inspection was a formal modifi-

cation of the Contract, the execution of this provision happened in Connecticut and Texas.

## ORDER

AND NOW, this 17th day of January, 1997, upon consideration of Defendants' Motion for Partial Summary Judgment, Plaintiff's Response, and Defendants' Reply thereto, it is hereby ORDERED that the Motion is GRANTED. Summary judgment is hereby entered in favor of Defendants and against Plaintiff on Count II of the Complaint.